514 A.2d 91

**Debra ANTHONY, Appellant,**

v.

**David ANTHONY.**

**Kenneth C. TOMPKINS, Appellant,**

v.

**Gloria J. TOMPKINS.**

Superior Court of Pennsylvania.

Argued April 24, 1985.

Filed Aug. 7, 1986.

590

Maria C. Mullane, Allentown, for appellant in No. 3430.

Glenn C. Vaughn, York, for appellant in No. 226.

Dianne M. Dickson, Allentown, for appellee in No. 3430.

Raymond R. Smith, York, for appellee in No. 226.

Before SPAETH *, President Judge, and CAVANAUGH, BROSKY, ROWLEY, WIEAND **, McEWEN, DEL SOLE, BECK and TAMILIA, JJ.

BECK, Judge:

The issues in these appeals are 1) whether under the Divorce Code an increase, during the parties' marriage, in the value of premarital assets constitutes marital property and 2) if the increase in value constitutes marital property, whether the entire increase is marital property or whether

* Spaeth, P.J., did not participate in the decision of these appeals because his term on the Superior Court expired before the Court rendered its decision.

** Wieand, J., recused himself after argument and did not participate in the decision of these appeals.

the increase in value should be reduced to reflect the factor of inflation.

We hold that the entire increase, during the parties' marriage, in the value of premarital assets is marital property and that the increase is not reduced to reflect inflation.

The Divorce Code[1] defines marital property as "all property acquired by either party during the marriage...." 23 P.S. § 401(e). It excepts from the definition of marital property certain enumerated assets with a proviso that as to those assets the "increase in value during the marriage" is marital property. 23 P.S. § 401(e)(1) & (e)(3).

Both the appellant in *Anthony* and the appellant in *Tompkins* argue on appeal that an increase in the value of a spouse's premarital property should not be regarded as marital property unless the appreciation in value is attributable to the joint efforts and/or financial contributions of both spouses and that to the extent an increase is due to economic factors such as inflation, it should be excluded.

Similar facts underlie both appeals. In both appeals, the appellant-spouse seeks to exempt from marital property the increased value of a residence which the spouse bought before the parties' marriage. In *Anthony*, the appellant-wife purchased a house prior to marrying the appellee-husband. The common pleas court found that the fair market value of the house was $43,500 at the time of the parties' marriage and $65,000 at the time of the parties' separation. The court ruled that the $21,500 increase in the fair market value of the house during the period of the parties' marriage constituted marital property subject to equitable division and distribution upon the parties' divorce. Appellant and appellee were each awarded one-half of the $21,500 increase.[2] In *Tompkins*, the appellant-husband acquired a

1. Act of April 2, 1980, P.L. 63, 23 P.S. § 401.
2. Although in this instance the court equally divided between the parties the increase in value which was marital property, "equitable division often will not be even; the essence of the concept of an equitable division is that 'after considering all relevant factors,' the court may 'deem[ ] just' a division that awards one of the parties more

house prior to marrying the appellee-wife. The common pleas court found that the fair market value of the house was $36,000 at the time of the parties' marriage and $42,000 at the time of the parties' separation. The court ruled that the $6,000 increase in the fair market value of the house during the period of the parties' marriage constituted marital property subject to equitable division and distribution upon the parties' divorce. Appellant and appellee were each awarded one-half of the $6,000 increase.[3]

## I.

The threshold inquiry is what comprises marital property —particularly, whether an increase in value, during the parties' marriage, of either spouse's premarital assets constitutes marital property. Pursuant to section 401 of the Divorce Code, marital property includes all property, real or personal, *acquired during the parties' marriage* by either spouse, whether titled individually or jointly. 23 P.S. § 401(e)–(f). Thus, the time, rather than the method, of property acquisition determines if an item of property constitutes marital property under the Code.

Even the limited marital property exceptions enumerated in subsections 401(e)(1)–(7)[4] of the Code reflect the signifi-

than half, perhaps the lion's share, of the property." *Platek v. Platek,* 309 Pa.Super. 16, 24, 454 A.2d 1059, 1063 (1982); *see* 23 P.S. § 401(d).

**3.** See footnote two, *supra.*

**4.** Subsection 401(e) of the Divorce Code states:

(e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:

(1) Property acquired in exchange for property acquired prior to the marriage except for the increase in value during the marriage.

(2) Property excluded by valid agreement of the parties entered into before, during or after the marriage.

(3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage.

(4) Property acquired after separation until the date of divorce, provided however, if the parties separate and reconcile, all property acquired subsequent to the final separation until their divorce.

(5) Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the time proceedings for the divorce are commenced.

cance of the time property is acquired in differentiating marital property from nonmarital property. For example, subsections 401(e)(1) and 401(e)(3) exclude from marital property any real or personal property received during the parties' marriage either in exchange for premarital property or by gift, bequest, devise or descent. Nevertheless, these subsections specifically classify as marital property any increase in the value of such exchange or given property during the parties' marriage. In other words, if accrued during the period of the parties' marriage, an appreciation in the value of property belonging to either spouse represents, in and of itself, property acquired during the parties' marriage, i.e., marital property. *See* 23 P.S. § 401(e)(1) and (3).

■ Because it is the time, rather than the manner, of acquisition that determines whether property constitutes marital property under Pennsylvania's Divorce Code, the spouses' efforts and/or financial contributions are not germane to definition of marital property under the Code.[5] *See* 23 P.S. § 401(e)–(f). The Code's emphasis on "when"—not "how"—property is acquired distinguishes Pennsylvania's divorce legislation from the marital dissolution law of other jurisdictions which exempt from marital property any assets

(6) Veterans' benefits exempt from attachment, levy or seizure pursuant to the act of September 2, 1958, Public Law 85–857, 72 Statute 1229, as amended, except for those benefits received by a veteran where such a veteran has waived a portion of his military retirement pay in order to receive Veteran's Compensation.

(7) Property to the extent to which such property has been mortgaged or otherwise encumbered in good faith for value, prior to the time proceedings for the divorce are commenced.

(Footnote deleted.)

**5.** Of course, where property is encumbered and is therefore not owned outright by either spouse, only the equity in the encumbered property possessed by one spouse or by both spouses should be evaluated for purposes of ascertaining the parties' marital property. If equity in the property is acquired during the marriage, such acquired equity is marital property. *Accord, Gregg v. Gregg,* 133 Mich.App. 23, 348 N.W.2d 295 (1984); *In re Marriage of Campbell,* 43 Colo.App. 72, 599 P.2d 275 (1979). We note that in the present appeals, no issue has been raised concerning the common pleas courts' treatment of property encumbrances.

not acquired in joint title or by the united efforts and/or financial contributions of both spouses. *See, e.g., Harper v. Harper,* 294 Md. 54, 448 A.2d 916 (1982) (comparing and explaining the inception of title, source of funds, and transmutation of property concepts employed in some sister states); *Robinson v. Robinson,* 569 S.W.2d 178 (Ky.Ct.App. 1978); *Suter v. Suter,* 97 Idaho 461, 546 P.2d 1169 (1976).

In construing Pennsylvania's Divorce Code, we must follow the Pennsylvania legislature's scheme which separates the factors for defining marital property from the factors for distributing marital property. Time of acquisition is the factor that the legislature mandates the courts use in determining whether property is a marital asset. *See* 23 P.S. § 401(e)–(f). In contrast, a list of ten factors found in subsection 401(d) of the statute are considerations that the legislature mandates courts use in determining distribution of marital property. Those ten factors relate to the personal and economic circumstances of the parties and the parties' contributions in bringing about an increase or decrease in the value of the marital assets. 23 P.S. § 401(d)(1)–(10). In other words, under the statute the court first determines what is marital property based upon the time of acquisition and then determines the equitable distribution of that property taking into account the factors in subsection 401(d).

Subsection 401(d) concerns the fair apportionment of marital property between the parties following a divorce, not the designation of assets as marital or nonmarital property. Once the parties' property has been earmarked as either marital or nonmarital property according to the time of its acquisition and the subsection 401(e) exceptions, *see* 23 P.S. § 401(e)–(f), then the court may, in conformity with subsection 401(d) of the Code, equitably divide and distribute the parties' marital property after due regard for all relevant factors among which are those listed in subsection 401(d) such as the "contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker." 23 P.S. § 401(d)(7). In *Platek v. Platek,* 309

Pa.Super. 16, 454 A.2d 1059 (1982), we noted that factors such as the parties' efforts or contributions toward procurement, preservation or enhancement of property are appropriately considered for purposes of equitable division and distribution of marital property under subsection 401(d) of the Code.

■ Given the Pennsylvania Divorce Code's focus on the time, instead of the manner, of property acquisition, section 401 of the Code is properly construed to categorize as marital property any accretion in the value of all of a spouse's premarital property to the extent that the value of the property on the date of the parties' marriage is exceeded by the value of the property at the time of the parties' separation or divorce, whichever applies under subsection 401(e)(4) of the Code. *Accord, In re Marriage of Reeser,* Colo.App., 635 P.2d 930 (1981) (Section 14–10–113(4), C.R.S. 1973). Construing the Code in another fashion would produce the anomalous result that any increase in the value of property acquired in *exchange* for premarital property would constitute marital property under 23 P.S. § 401(e)(1), but any increase in the value of premarital property *not exchanged* for other property would be excluded from marital property. Inasmuch as the legislature is presumed not to have intended an absurd or unreasonable result, we interpret the Code to accord identical treatment to both types of property—that which has been exchanged and that which has not—and hence to designate as marital property any increase, during the parties' marriage, in the value of all of a spouse's premarital property. *See* subsection 1922(1) of the Statutory Construction Act of 1972, 1 Pa C.S. § 1922(1); *Fireman's Fund Insurance Co. v. Nationwide Mutual Insurance Co.,* 317 Pa.Super. 497, 464 A.2d 431 (1983).

This interpretation of the Code does not create an injustice for the party who may have by dint of his physical labor or mental acumen provided the necessary ingredients and conditions for the increased value. In distributing the property, the court is free to take these factors into account

and make a more favorable distribution or even distribute all of the asset to that individual. 23 P.S. § 401(d)(7); *Platek*.

Such an interpretation of section 401 also comports with the Code's directive to "[e]ffectuate economic justice between parties who are divorced...." 23 P.S. § 102(a)(6). The existence of a premarital asset may discourage or prevent the parties' obtainment of a comparable marital asset and lull the nonowning spouse into a false sense of security. This is especially likely to occur where, as in the appeals sub judice, a residence has been obtained by one spouse prior to the parties' marriage and has been occupied by both spouses after the parties' marriage. Since it was not acquired during the parties' marriage, the residence does not qualify under section 401 as marital property. Yet, the parties' use of the premarital home acts as a disincentive to the parties' acquisition of equivalent marital property and therefore affords the nonowning spouse little opportunity to attain interest in marital property. Nonrecognition of the increase, during the period of the parties' marriage, in the value of the residence would unjustly deprive the nonowning spouse of any economic benefit derived from the parties' use of the premarital residence.

For the preceding reasons, the increase, during the parties' marriage, in the value of either spouse's premarital assets is marital property.

## II.

Since the increase in the value of premarital assets is marital property, it is necessary to ascertain what constitutes an increase in the *value* of a spouse's premarital assets. Specifically, we address the appellants' assertion that any appreciation due to inflation should not be regarded as an increase in value subject to equitable division and distribution.

Neither the term "value" nor the expression "increase in value" is explained by section 401 of the Divorce Code. *See, e.g.*, 23 P.S. § 401(e)(1) and 401(e)(3). Hence, the basic

tenets of statutory interpretation must be employed. Where a statute fails to define the language used therein, common words and phrases are construed according to their ordinary and approved usage (plain meaning), and technical words and phrases are construed according to their peculiar and appropriate meaning. Subsection 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a); *Fireman's Fund Insurance Co.*

Value denotes "the power of a commodity to command other commodities in exchange for itself; this power is measured by the proportional quantities in which a commodity exchanges with all other commodities. . . . [P]rice is simply the 'money name' of the value of a commodity." M. Spencer, *Contemporary Economics* 627 (2d ed. 1974); Black's Law Dictionary 1721 (rev. 4th ed. 1968). Stated alternatively, the fair market (exchange) value of property is "the price a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell." *Cheltenham Federal Savings and Loan Association v. Pocono Sky Enterprises, Inc.*, 305 Pa.Super. 471, 480, 451 A.2d 744, 748 (1982). Therefore, the value of any property is a function of its relation to other property, i.e., its fair market (exchange) value.

Inflation is not a factor that can be logically eliminated from the determination of a property's fair market value. Inflation represents the "rise in the general price level (or average level of prices) of all goods and services . . . [or equivalently] a reduction in the purchasing power of a unit of money," Spencer, *supra*, at 149, and as such, comprises a component of the marketplace which necessarily affects the fair market (exchange) value of property. Thus, there is no reason to distinguish between increases in property value due to inflation and increases in property value resulting from other economic conditions in the marketplace. Such a distinction contravenes the legislative intent expressed in the Code and presents nearly insurmountable proof problems.

The purpose of statutory construction is the ascertainment and execution of legislative intention. Subsection 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). In the present case we must determine what the legislature meant by the expression "increase in value" which is not defined in the Code. "When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters: ... (4) The object to be attained ... [and] (6) The consequences of a particular interpretation." Subsection 1921(c) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c); *Lehigh Valley Cooperative Farmers v. Bureau of Employment Security, Department of Labor and Industry,* 498 Pa. 521, 447 A.2d 948 (1982); *Busy Beaver Building Centers, Inc. v. Tueche,* 295 Pa.Super. 504, 442 A.2d 252 (1981).

The Code's clear mandate is the rendering of economic justice for divorced parties. Subsection 102(a)(6) of the Code, 23 P.S. § 102(a)(6). Underlying this directive is the realization that "marriage is, *inter alia,* an economic partnership whose assets, upon dissolution of the marriage, may be equitably divided and distributed between the parties...." *Flynn v. Flynn,* 341 Pa.Super. 76, 87, 491 A.2d 156, 162 (1985) (Beck, J., concurring and dissenting). Where the parties' economic partnership has existed in a marketplace influenced by inflation, it is appropriate to have the property reflect inflation's effect upon the partnership assets by including as marital property any increase in the value of each spouse's premarital assets due to inflation during the parties' marriage. *Accord, Gregg v. Gregg,* 133 Mich.App. 23, 348 N.W.2d 295 (1984).

Classification of property as marital property does not signify, however, that the parties must receive equal portions of that property when the assets of the parties' dissolved economic partnership are divided and distributed between the parties. *Platek;* 23 P.S. § 401(d); *accord, Gregg.* Subsection 401(d) of the Code allows the court great flexibility in adjusting property awards to reflect,

among other considerations, the parties' respective sources of income, opportunities for future asset accumulation, and contributions to the acquisition, dissipation, preservation, appreciation, or depreciation of the parties' marital property.[6]

Otherwise construing the Code to exclude inflation from a calculation of increased property value would produce anomalous results. If inflation were removed from the computation of the appreciated value of a premarital asset, consistency would demand that inflation also be eliminated from the determination of the increased value of all other marital property including that enumerated in subsections 401(e)(1) and 401(e)(3) of the Code which identify as marital property the increase in value, during the parties' marriage, of certain types of nonmarital property. But neither subsections 401(e)(1) and 401(e)(3) nor any other provisions of the Code contain restrictive language that defines increased property value to exclude inflation. Because courts are not empowered to inject into a statute qualifying language not legislatively supplied, *Worley v. Augustine*, 310 Pa.Super. 178, 456 A.2d 558 (1983), we should not superimpose on the Code any language limiting an increase in property value to appreciation from non-inflationary sources.

Additionally, massive and near impossible proof problems would be generated by attempting to eliminate inflation from a calculation of increased value. The number, complexity, diversity, and interrelationship of economic factors in the marketplace make it difficult, if not impossible, to distinguish between property value increases due to inflation and those due to other economic conditions.

The following hypotheticals will illustrate. Assume that prior to the parties' marriage, a spouse bought stock on the New York Stock Exchange and that the stock had a fair market value of $100,000 at the time of the parties' mar-

---

**6.** Subsection 401(e)(2) of the Code, 23 P.S. § 401(e)(2), also affords the parties flexibility by permitting the exclusion from marital property of any property covered by a valid agreement entered into by the parties before, during or after their marriage.

riage. Assume further that during the parties' marriage, the spouse's stock was traded several times for other stock and that at the time of valuing the property for dissolution purposes, the spouse's stock portfolio had a fair market value of $200,000. Under these hypothesized circumstances, could inflation's effect on the fair market value of the stock be isolated from other factors influencing the stock's value such as the overall condition of the stock market, the psychology of the individual and institutional investor in relation to the company or companies, and the future earning prospects of the company or companies whose stock was held?

Or assume that prior to the parties' marriage, a spouse bought a house which had a fair market value of $100,000 at the time of the parties' marriage and a fair market value of $200,000 at the time of valuing the property for dissolution purposes. Could inflation's influence on the home's fair market value be segregated from the appreciation in the home's value due to the building of a nearby school or the installation of a municipal water system?

■ Trying to separate the effect of inflation from the effect of other market factors would unduly complicate and delay the court's assessment of the parties' marital property. Since "good sense and practical utility are always to be considered" in interpreting a statute, *Commonwealth v. Coleman*, 289 Pa.Super. 221, 227, 433 A.2d 36, 39 (1981); *Schaefer v. Hilton*, 473 Pa. 237, 373 A.2d 1350 (1977), we conclude that the Code includes inflation as part of the appreciation in property value subject to equitable division and distribution.

## III.

Inasmuch as the courts of common pleas in *Anthony* and *Tompkins* properly classified as marital property the increase, during the parties' respective marriages, in the value of each spouse's premarital assets and regarded infla-

tion as an inseparable component of the fair market value of those assets, we affirm the orders being appealed.[7]

Orders affirmed.

DEL SOLE, ROWLEY and BROSKY, JJ., join the majority opinion by BECK, J.

CAVANAUGH and McEWEN, JJ., join concurring and dissenting opinion by TAMILIA, J.

TAMILIA, Judge concurring and dissenting:

These appeals were combined for consideration before the court en banc as they concern the single issue of whether an increase in value, during marriage, of non-marital property is marital property subject to equitable distribution under the Divorce Code of 1980, 23 P.S. § 401(d), as qualified by definitions of "marital property" contained in section 401(e), (1), (3) and (f). Two panels of this Court, on appeals from decisions of trial courts, reached the conclusion that such increases were marital property, but the underlying theories of computing the increase in value were in conflict and could result in confusion among the bench and bar, hence this en banc review.

While the majority has followed the rationale and research of the minority for purposes of resolving the central issue of this case, in finding that increase in value of property acquired prior to divorce is to be considered marital property for purposes of equitable distribution, its failure to explicitly state that the effect of inflationary increase may be considered by the court in making distribution and

---

7. In their respective appellate briefs, neither appellant Debra Anthony nor appellee David Anthony raises an issue concerning the time at which property valuation should be made. Therefore contrary to the contentions made in the concurring and dissenting opinion, the question when property valuation should occur has been waived on appeal. Pa.R.A.P. 2101, 2111, 2112, 2116, 2118, 2119; *Commonwealth v. Lobiondo,* 501 Pa. 599, 462 A.2d 662 (1983); *In re Estate of Smith,* 492 Pa. 178, 423 A.2d 331 (1980), *reargument denied,* January 8, 1981; *Swidzinski v. Schultz,* 342 Pa.Super. 422, 493 A.2d 93 (1985); *Rago v. Nace,* 313 Pa.Super. 575, 460 A.2d 337 (1983); *Commonwealth v. Sanford,* 299 Pa.Super. 64, 445 A.2d 149 (1982).

refusal to remand on *Anthony* for consideration of these findings compels this Concurring and Dissenting Opinion.

A brief recital of the facts in each case subject to our consideration will serve to focus our review of applicable law.

In *Anthony v. Anthony*, appellant/wife purchased a residence prior to her marriage to appellee. The parties were married on October 18, 1974, separated June of 1979, and divorced on November 23, 1983. It was the first marriage for the husband and the second for the wife. The residence remained titled solely in the wife's name throughout the marriage. During their marriage, appellee contributed $5,400 towards a joint fund used for the improvement of the property and made contributions of labor and materials to the property of $3,000. (These amounts are fixed by the master and uncontested.) The fair market value of the real estate at the inception of the marriage was $43,500 and at the date of separation in 1979, $65,000. The lower court, after exceptions to the master's report were filed by both parties, chose not to accept the master's recommendations, ignored the contributions by appellee and determined that the increase in value was the difference in market value between the date of marriage (1974) and the date of separation (1979). He divided the $21,500 difference equally between the parties. Appellant/wife appealed from this Order alleging any increase was non-marital property or due entirely from inflation.

In *Tompkins v. Tompkins*, the parties were married on April 22, 1977 and separated in December, 1981. They were divorced on November 29, 1982. It was the second marriage for both appellant/husband and appellee/wife. Appellant had previously acquired his first wife's interest in the real estate of his prior marriage, taking the property in his sole name, by refinancing and acquiring a $19,800 mortgage. Mortgage payments of $184 per month were made from joint funds of the present marriage as were other upkeep expenses. Both appellant and appellee were employed and placed their earnings in a common fund. The

appraised value of the real estate rose from $36,000 in 1977 to $42,000 at the time of separation in 1981. The master and court established the increased value to be $6,000. The master would not recommend any portion of the increased value be distributed to the wife as marital property. The court, however, sustained wife's exception and apportioned one-half of the increase in value, that is, $3,000 to each party.

I would find the factual situations in *Anthony* and *Tompkins* to be sufficiently similar to establish a rule of law applicable to both cases. These cases present a matter of first impression in this Commonwealth for appellate review under the 1980 Divorce Code.

As with the exposition of the facts, a summary of the applicable law will assist in a clear analysis of the law's application to those facts.

Looking to the legislative intent, the Divorce Code, 23 P.S. § 102, provides:

### § 102. Legislative findings and intent

(a) The family is the basic unit in society and the protection and preservation of the family is of paramount public concern. Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to:

. . . . .

(6) Effectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and *insure a fair and just determination and settlement of their property rights.* (emphasis added)

The cases before us turn on what is *marital property* as it relates to an increase in value of *non-marital property* as provided by 23 P.S. § 401(e) and (f) of the Divorce Code.

Sections 401(e) and (f) provide:

(e) For purpose of this chapter only, "marital property" means all property acquired by either party during the marriage except:

1) Property acquired in exchange for property acquired prior to the marriage *except for the increase in value during the marriage.* (emphasis added)

.   .   .   .   .

(3) Property acquired by gift, bequest, devise or descent *except for the increase in value during the marriage.* (emphasis added)

.   .   .   .   .

(f) All property, whether real or personal, acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (e).

Finally, after ascertainment of the applicable rule as to what increase in value qualifies as marital property, we must apply all factors relevant to equitable distribution as specified by section 401(d) as follows:

(d) In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors including:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

Our inquiry first must concern itself with what constitutes marital property within the precepts of the Divorce Code.

We begin with the presumption, pursuant to 23 P.S. § 401(f), that all property is marital property if acquired by the parties during the marriage *unless the presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (e), supra.* A literal reading of this section means that property acquired by a spouse prior to marriage is not marital property. However, it contains an exception that despite sole ownership, if it can be proven that the property, including any part of it, was a result of an increase in value during the marriage (section 401(e)(1), (3)), that property, to the extent of its increased value, is marital property. We reject any possible reading of section 401(e)(1) which would limit an increase in value only to property acquired in exchange for property owned prior to the marriage as lacking rationality. It is inconceivable that the legislature would intend that exchanged property be treated differently from originally owned property as to increased value when both are treated as equivalent, with regard to basic value. In addition, our analysis shows that even in those states with the most restrictive view of increased value, most accept some form of allowance of increased value to prior owned property.

The legislature, pursuant to 23 P.S. § 102(a)(6), impels us to "Effectuate economic justice between parties ... and insure a fair and just determination and settlement of their property rights." *See Bacchetta v. Bacchetta,* 498 Pa. 227, 445 A.2d 1194 (1982). Section 401(d)(7) further requires that we consider as a relevant factor in the *distribution* of marital property, "The *contribution* or *dissipation* of each party in the *acquisition, preservation, depreciation* or *appreciation* of the marital property, *including the contribution of a party as homemaker.* " (emphasis added) While these factors are specifically applicable in weighing distribution, they are of equal importance in consideration of acquisition as it relates to the increased value of property. If these considerations were not spelled out in the distribution section, they would nevertheless be a consideration in determining "value" as we discuss below.

## DISCUSSION

The primary source of interpretation of what constitutes increased value is derived from community property regimes of which there are eight in this country. Community property codes begin with the premise that marriage is a partnership and the partnership owns the respective talents and efforts of each spouse; whatever is acquired by them is shared equally as community property. Under community property regimes, there are three kinds of property: 1) the separate property of the husband, 2) the separate property of the wife, and 3) community property. *Family Property Working Paper 8,* Law Reform Commission of Canada, March 1975, p. 19, quoted in Wadlington, *Domestic Relations Cases and Materials,* Foundation Press Inc., 1984. Commingling occurs when separate property by action or intent of the parties becomes confused with community property. To determine which property is separate and which is community, resort has been had to theories such as "inception of title" and "source of funds." Under the inception of title theory, title at the time of acquisition controls the character of the property regardless of efforts

or contribution by the individuals or the community.[1] The source of funds theory permits the acquisition of a share or equitable lien in the separate property of the other spouse to the extent of financial or work effort on the part of the non-titled spouse.

These concepts have been adopted in varying degrees by equitable distribution states in construing marital property.

**1.** *Fisher v. Fisher,* 86 Idaho 131, 383 P.2d 840 (1963).

The status of property as separate or community property is fixed as of the time
when it is acquired ... property to which one spouse has acquired an equitable right before marriage is separate property, though such right is not perfected until after marriage.
*Id.* at 135–36, 383 P.2d at 842.
... though it (contribution of community) funds would impress the property with a community lien ... subject, however, to the right of (other spouse) to reimbursement for one-half of the community funds applied toward payment thereof.
*Id.* at 136, 383 P.2d at 843.
*Bowman v. Bowman,* 639 P.2d 1257 (Okla.Ct.App.1981).

The increase in value of separate property is not even an issue ... (in a divorce case since) [i]n all cases the value increase is only pertinent when attributed to expenditure of either jointly acquired funds or separate funds of party claiming the right to property division of the asset. In no event should the increase in value (of separate property) attributed to inflation be divided by the court as "jointly acquired property"[5]

Likewise, any ordinary increase in value, including usual and ordinary contributions, (to a retirement fund) are not ... subject to property division.
[5] The exception would be where there is joint ownership; and, then the property could be subject to division only to the extent of inflationary increase attributable to the separately owned fractional share. (citation omitted)
*Id.* at 1261.
*Brown v. Brown,* 58 Ariz. 333, 119 P.2d 938 (1941).

As a general rule, *when the separate funds of the other spouse or the community funds are expended in improvements on the separate property of one of the spouses, the title to the improvements follows the land,* in the absence of any specific agreement to the contrary....
There is an equitable lien modification to include an increase in value attributable to the work effort of the community. *Potthoff v. Potthoff,* 128 Ariz. 557, 627 P.2d 708 (Ct.App.1981).

They are most extensively explored in *Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982).[2] We must caution, how-

**2.** *Hoffman v. Hoffman*, 676 S.W.2d 817 (Mo.banc 1984), adopts the source of funds rule that property is "acquired" by determining the source of the funds financing the purchase and the property is considered to be acquired as it is paid for. Section 452.330, RSMo Cum.Supp.1983 provides:

· · · · ·

2. For purposes of sections 452.300 to 452.415 only, "marital property" means all property acquired by either spouse subsequent to the marriage except:
   (1) Property acquired by gift, bequest, devise or descent;
   (2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

· · · · ·

(5) The increase in value of property acquired prior to the marriage.

Thus, Missouri *excludes* any increase except where an *equitable lien would apply.* In doing so, it repudiates *Cain v. Cain,* 536 S.W.2d 866 (Mo.App.1976), which held title was determined at inception and an equitable lien did not accrue from mortgage payments made from marital funds. Missouri followed Maine; *see Tibbetts v. Tibbetts,* 406 A.2d 70 (Me.1979); *Hall v. Hall,* 462 A.2d 1179 (Me.1983).

Where separate property was enhanced during marriage by marital funds for improvements it was neither entirely marital nor entirely non-marital. ME.REV.STAT.ANN. tit. 19, § 722–A provides in pertinent part:

2. Definition. For purposes of this section only, "marital property" (means all property) acquired by either spouse subsequent to the marriage except:
   A. Property acquired by gift, bequest, devise or descent;
   B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

· · · · ·

E. *The increase in value of property acquired prior to the marriage.*
(emphasis added)

Derived from Maine is the adoption of the *source of funds theory* —creating an equitable lien to the extent of contribution during marriage—in *Harper v. Harper, supra,* also *Grant v. Zich,* 300 Md. 256, 477 A.2d 1163 (1984). However, Maryland, like Maine, has no provision for increased value of separately owned property under the Maryland Code (1974, 1984 Repl. Vol.; Repealed, 1984, Ann. Code of Md. F.L. § 8–201–(e)). Section 3–6A–01(e) of the Courts and Judicial Proceedings Article, defines marital property as:

(e) . . . all property, however titled, acquired by either or both spouses during their marriage. It does not include property acquired prior to the marriage, property acquired by inheritance or gift from a third party, or property excluded by valid agreement *or property directly traceable to any of these sources.*

*Compare* revised Annotated Code of Maryland:

ever, that community property codes derived from Spanish and French law are not interchangeable with the less restrictive concepts of equitable distribution. Community property division aims at "equal" distribution whereas, equitable distribution looks to what is fair and just under all

### § 8–201

(e) *Marital property.* —(1) "Marital property" means the property, however titled, acquired by 1 or both parties during the marriage.

(2) "Marital property" does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement; or

(iv) directly traceable to any of these sources.

Since the Maryland Code makes no provision for increased value, as does the Pennsylvania Divorce Code, increase in inherent value, aside from contribution giving rise to an equitable lien, is not considered marital property and is reasonably interpreted to be specifically excluded. This is identical to the New Jersey statute and its interpretation by the appellate courts there. N.J.S.A. 2A:34–23 provides:

In all actions where a judgment of divorce or divorce from bed and board is entered the court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, *which was legally and beneficially acquired by them or either of them during the marriage.* However, all such property, real, personal or otherwise, *legally or beneficially acquired during the marriage by either party by way of gift, devise, or intestate succession, shall not be subject to equitable distribution,* except that interspousal gifts shall be subject to equitable distribution.

Amended by L.1971, c. 212, § 8; L.1980, c. 181, § 1, eff. Dec. 31, 1980; L.1983, 519, § 1, eff. Jan. 17, 1984

In *Painter v. Painter,* 65 N.J. 196, 320 A.2d 484 (1974), *Mol v. Mol,* 147 N.J.Super. 5, 370 A.2d 509 (1977), and *Griffith v. Griffith,* 185 N.J.Super. 382, 448 A.2d 1035 (1982), espousing the rule adopted in *Painter,* property owned by a husband or wife at the time of marriage enjoys an immunity to equitable distribution, and if such property, owned at the time of marriage, later increases in value, such increase enjoys a like immunity. The immunity does not include elements of value contributed by the other spouse, or joint contributions. Pennsylvania is not limited to the narrow concept of acquisition espoused by Maine, Maryland and New Jersey as our law specifically provides for increased value as part of matrimonial property. California, in *In re Marriage of Moore,* 28 Cal.3d 366, 168 Cal.Rptr. 662, 618 P.2d 208 (1980), goes beyond the "equitable lien" or "source of funds" theory and includes as marital property, aside from the contribution of the community funds, a pro tanto increase in the *inherent* value based on the contribution of each, excluding taxes, interest and insurance. California is a community property state and does not contain a provision in its code similar to the Pennsylvania section on increased value.

the circumstances. *See Platek v. Platek,* 309 Pa.Super. 16, 454 A.2d 1059 (1982). "In enacting the equitable distribution provision of the Divorce Code, the Legislature sought to accomplish far different objectives than were sought in enacting the Community Property Law...." *Bacchetta, supra* 498 Pa. at 232, 445 A.2d at 1197.

A third theory, "transmutation of property", holds that where property is commingled by title, financial or work contribution, the presumption of an intent to convert the *entire* property to "marital property" is created. Only without commingling will separate property retain its identity as such. *In re Marriage of Smith,* 86 Ill.2d 518, 56 Ill.Dec. 693, 427 N.E.2d 1239 (1981).

For reasons discussed below, we cannot adopt any of these theories in their entirety. The variation and nuances in the statutes of the various states on equitable distribution and marital property, and the different interpretations of "increased value" and "acquire" as it relates to marital property, dictate we establish our concepts on the basis of our intepretation of Pennsylvania law rather than adopting the interpretation of the courts of one or the other of our sister states. We believe the position taken in Colorado, which holds that any increase in value is marital property, is applicable in Pennsylvania since that is the clear and unqualified statement of the law. *In re the Marriage of Campbell,* 43 Colo.App. 72, 599 P.2d 275 (1979); *In re Marriage Reeser,* Colo.Ct.App., 635 P.2d 930 (1981).

The Colorado statute, virtually identical in meaning to that adopted in Pennsylvania, reads as follows:

(2) For purposes of this article only, "marital property" means all property acquired by either spouse subsequent to the marriage except:

(a) Property acquired by gift, bequest, devise, or descent;

(b) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(c) Property acquired by a spouse after a decree of legal separation; and

(d) Property excluded by valid agreement of the parties.

(3) All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.

(4) *An asset of a spouse acquired prior to the marriage or in accordance with subsection (2)(a) or (2)(b) of this section shall be considered as marital property, for purposes of this article only, to the extent that its present value exceeds its value at the time of the marriage or at the time of acquisition if acquired after the marriage.* (emphasis added)

C.R.S. 1973, 14–10–113(2), (3), (4).

If we adopt the source of funds theory, we will have to establish two classes of property which "increase in value" —that which increases by virtue of the efforts of the parties and is counted for distribution, and that which increases by virtue of economic and other factors independent of spousal effort or contribution and is not considered marital property.

For example, if property, consisting of realty and bonds, possessed prior to the marriage or given by gift, bequest, devise or descent, increases in value and that increase can be attributed to spousal effort in paying off the bond or mortgage or improving the realty, it is considered "increased value". An increase in value of the realty or bond due to market conditions would not. We can find no language in the Divorce Code which supports this conclusion, and a plain reading of the language allows for no exceptions. To do otherwise would simply be to apply the

law of partition and equitable lien to the concept of equitable distribution, ignoring the new and far more expansive concept of marital property intended by the legislature.

To exclude property which increased in value, aside from the efforts and contributions of the parties, would be to engraft a qualification to increase in value which is not contained in the code. That exception would read "except for increase in value, *which is only that value attributable to the efforts of the parties during marriage.*" The legislature presumed that the marriage is a unity (23 P.S. § 102) and all benefits accruing to the unity are to be shared equitably. *See King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984). Therefore, any increase in value, whatever the source, of solely titled property, is credited to the unity. The code recognizes no exceptions and if the parties do not intend the fullness of that unity to be operative, they have the power to alter the presumption by agreement pursuant to section 401(e)(2), (Property excluded by valid agreement of the parties entered into before, during or after the marriage.), which serves to exclude such consideration. *Rosenberg v. Rosenberg,* 322 Pa.Super. 293, 469 A.2d 626 (1983).

We conclude that an increase in value of previously acquired property becomes marital property for the purposes of equitable distribution. We reject the "inception of title", "source of funds" and "transmutation" theories held in other states. *See* Annot. 24 ALR4th 453, Divorce and Separation § 3[b].

The next question to be resolved is what is meant by increased value. Value may be said to increase in three fashions: 1) through the efforts of the parties or third parties, 2) through intrinsic worth as a function of time, scarcity or social/economic/technological conditions, or 3) inflation.[3] *See* Annot. 34 ALR4th 63, Proper Date for

---

**3.** In the case before us, we have insufficient testimony to determine what portions of the payment went to interest and exactly how much of the spousal income went to taxes, but since we have not adopted the community property theory of source of funds, it is not material.

Valuation of Property Being Distributed Pursuant to Divorce.

The first two factors are considered to be an actual increase in value whereas inflation is an exponential component of the original value and not an actual increase in value. According to *Webster's Ninth New Collegiate Dictionary*, (9th ed. 1983) inflation is "an increase in the volume of money and credit relative to available goods resulting in a substantial and continuing rise in the general price level." In plain language, any increase in price resulting from inflation is attributable to the dilution of the worth of the money supply and not to the enhancement of the worth of the property in question. There is, therefore, no actual increase in value. In an inverse fashion, should the price of the property remain the same during the period of valuation, to the extent there was an inflationary increase, the actual value of the property is diminished.[4] However, the market value of the property, which is the highest price a willing buyer would pay and a willing seller accept, both being fully informed, and the property being exposed for a reasonable period of time, has within it any inflationary increase as well as intrinsic increase in value from the date of premarital acquisition. The market value may be different than the market price, which is the price for which a property can actually be sold for at a given time. It is this value with which we must ultimately be concerned at the time of equitable distribution.

Putting aside for the moment the inflationary aspect of increased value, we turn to consideration of the legislative intent and application of the concept of increased value to marital property and equitable distribution.

In one respect the legislature has simplified our consideration of this issue by carving out a special view of property for equitable distribution purposes.

*See In Re Marriage of Moore,* Calif.1980, 168 Cal.Rptr. 662, 619 P.2d 208.

**4.** These are economic fluctuations which are factored in to our chosen determinent of value, market value, and therefore, as discussed below not to be excluded when ascertaining increase in value.

**23 P.S. § 401. Decree of court**

.    .    .    .    .

(e) *For purposes of this chapter only,* "marital property" means all property *acquired by either party* during the marriage except: ...

(f) All property, whether real or personal, *acquired by either party* during the marriage *is presumed to be marital property* regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (e). (emphasis added)

Thus we are not bound by the law as it applies in partition or distribution when section 401 is not applicable. Nor are we unduly restrained by title or its inception before or after marriage, until the presumption of marital property is overcome by the party alleging the property to be non-marital property.[5]

To summarize, pursuant to 23 P.S. § 401(e), property acquired during marriage is that property acquired by the parties, in either or both names, and any acquired by value attributable to the efforts of the parties either to increase the equity in the property or to maintain the value of the property to avoid deterioration or dissipation, however titled or whenever acquired. (Concept of limited transmutation)[6] Thus any part of the value of property, which can be attributed to contribution or effort by the parties, is property acquired during the marriage.

5. The inception of title theory espoused by a majority of community property states and at least one equitable distribution state holds that property acquired in part before marriage and in part after marriage does not become marital property despite contribution of the marital funds—property is determined by title at its inception.

6. Illinois has adopted the transmutation of property theory—property commingled by contribution of marital funds to solely owned property is presumed to be marital property. Our law requires that we preserve the individual title to property to the extent there is no increase in value.

The second level of consideration is an increase in value of property owned at the time of marriage by one of the spouses or acquired after the marriage by gift, devise or in exchange for separate property, aside from efforts of the parties after marriage. Any increase in value resulting from the considerations immediately above, or due to fluctuations in market or economic conditions, which enhances the market value of the property, whether or not any effort by the parties was involved, is an increase in value which subjects the property to consideration as marital property. This conforms to the Colorado view:

In the following divorce, separation, or dissolution of marriage cases, the courts rejected the notion that as a general rule the appreciation in value of separate property during a marriage constitutes separate or nonmarital property in the absence of a contribution to the enhancement by either spouse.

*In Re Marriage of Wildin* 39 Colo App 189, 563 P.2d 384 (1977), a dissolution of marriage action, the court pointed out that increases in the value of separate property were expressly made marital property by statute, and that as marital property, such increases were subject to division under the conditions set forth in the statute. The court pointed out, however, that the fact that such increases are marital property does not mandate that such property be divided equally, nor does it necessarily preclude the award of substantially all of such property to only one spouse.

Similarly, in *Re Marriage of Campbell* (1979, Colo App) 43 Colo App 72, 599 P2d 275, a divorce action in which the court upheld the trial court's declaration that equity accumulated during the marriage on the marital residence, which had been the husband's separate property, was marital property, the court said that the mandate of the statute that separate property remains separate was subject to the exception that any increase in value during marriage is marital property.

And *Re Marriage of Reeser* (1981, Colo App) 635 P2d 930, is to the same effect.

24 ALR4th 453, 460 § 3[b].

And construing a state statute to the effect that the amount of marital property interest in an asset is determined by "the extent that its present value exceeds its value at the time of the marriage or at the time of acquisition if acquired after the marriage," (1981, Colo App) 635 P2d 930, held that the husband in a divorce action was entitled to an equitable share in the total amount of appreciation in the value of the former marital residence that accrued during the period of reconciliation after the wife became sole owner of the home.

24 ALR4th 453, 465 § 4[b].

The view adopted in *Harper, supra,* limiting any increase to that of spousal contribution, came from the holding by the court in Maine, *Tibbetts v. Tibbetts, supra, which, however, has a specific exclusion as to increase in property acquired prior to marriage. Also see* 13 Del.C. § 1513(b)(3), which provides " 'marital property' means all property acquired by either party subsequent to the marriage except ... the increase in value of property acquired prior to the marriage;" and *Frank G.W. v. Carole M.W.,* 457 A.2d 715 (1983).

Those states which adopted the source of the funds theory or the inception of title theory follow precepts of community property law which separate the acquisition of property into "lucrative" (as a result of market conditions) and "onerous" (as a result of efforts and contribution of parties) means. Krauskopf, *Marital Property at Marriage Dissolution,* 43 Mo.L.Rev. 157, 178–79 (1978).

Illinois, because of its special exception above, would exempt property acquired by "lucrative means" and allow a total transmutation if there is *any* commingling by transfer or marital contribution.

The treatment of inflation as an increase in value receives varying and unequal treatment throughout this country. In

most jurisdictions, inflationary increase is not considered increased value. Since we are departing from the underlying theories and concepts upon which those jurisdictions arrive at increased value, we also reject discounting the effect of inflation on value as it applies to matrimonial property. The reason for this is twofold. First, those jurisdictions eschewing inflation from consideration of increased value look only to contribution or work product of the parties as a maesure of increased value, and invariably reject increase through market conditions or economic influences far outside the control of either spouse, which would include inflation. Eight states statutorily classify increase in the value of separate property as separate property, making no distinction as to how the increased value was achieved.[7] Colorado, as noted above, makes no distinction and, it alone, of all the states, has statutory provisions similar to Pennsylvania. We, therefore, find no policy consideration or precedent from other jurisdictions which impels us to reject consideration of inflationary increases from computation of increased value of prior owned property. The second consideration is that a close reading of the statute and the legislative background to those sections of the Divorce Code which are under review here, provides no basis for us to impose any limitations as to the factors which go to the increase in market value of matrimonial property.

I have conducted a thorough review of the development of the law in this country as it relates to this issue. Much of that development focused on community property law and it is necessary that we conduct such a review to clearly distinguish its application from ours. The lower court, in *Anthony*, relied entirely on *Birkel v. Birkel*, 131 Pgh.Leg.J. 102 (1983), 24 Pa. D & C3d 499 (1982). That case, which specifically derived its authority from community property law, favorably cited the cases we analyzed above, to the effect that marital contribution to separate property would

7. Those states are: Arkansas, Delaware, District of Columbia, Illinois, Maine, Minnesota, Missouri and North Carolina. "Equitable Distribution—An Update," *Equitable Distribution Reporter*, Vol. 2.

be *the measure* of increased value (a more restrictive view than we hold here). Numerous of the cases analyzed were cited in the briefs of appellant/appellee for authority and it is essential that we do not permit theories espoused in those cases to be confused with our legislation. Not to discuss the distinctions would be to leave our findings in a vacuum and to invite confusion and disputation.

## APPLICATION

To convert the application of the legislative intent to a straightforward procedure to determine what is marital property when that consideration must include any increase in value, the following process would apply:

1.) All property acquired during the marriage is presumed to be marital property at the outset. (23 P.S. § 401(e))

2.) The title to such property is irrelevant to this presumption. (23 P.S. § 401(f))

3.) The presumption is rebutted by showing that the property was acquired as follows (23 P.S. § 401(f)):

a.) Property acquired before the marriage or in exchange for such prior acquired property. (23 P.S. § 401(e)(1))

b.) By gift, bequest, devise or descent. (23 P.S. § 401(e)(3))

4.) When the burden is met by the party required to establish the exceptions above, the burden then shifts to the first party to establish any increase in value during the marriage to the excepted property (§ 401(e)(1), (3)) by proving:

a.) The value at time of marriage and the value at the relevant point between the time of separation and divorce, considering the effort or contributions to value enhancement or retention, and/or

b.) increase in value by virtue of time, economic conditions or the market.

Once marital property, as related to increased value, is ascertained, all of the relevant factors for equitable distri-

bution, considered in section 401(d), apply in an independent determination as to the division of the property.[8]

At this point in determining distribution, it is within the discretion of the trial judge to give whatever weight, if any, he desires to increased value, including inflationary increase as one of the multiple factors to be considered under section 401(d). In particular we note the broad discretion given the trial judge in this regard by section 401(d)(7), "The contribution or dissipation of each party in the acquisition, preservation, *depreciation or appreciation of the marital property,* including the contribution of a party as homemaker." (emphasis added)

> We note that there is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of factors of 401(d) serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions. The concept of equitable distribution is not an equal division of marital property.

*Semasek v. Semasek,* 331 Pa.Super. 1, 11, 479 A.2d 1047, 1052 (1984). With these precepts in mind, we can apply them to the cases before us.

In *Anthony v. Anthony,* the facts establish the fair market value of the property at the time of marriage was $43,500 and at the date of separation in 1979 was $65,000. The master found and appellant alleged gifts of $5,400 for improvements and $3,000 for work and materials toward the real estate. The court, in disregarding the master's

---

**8.** To the extent property is encumbered at the time of marriage, a comparison of actual value at the time of marriage to actual value at the point ascertained for distribution, is still the key consideration. The value at each point is determined less the *then* existing encumbrance.

E.g. Market value — less encumbrance at the time of marriage = pre-marital value.

Market value — less existing encumbrance — less pre-marital value = increased value (marital property value).

report, took the stated increase of $21,500 and divided it equally between the parties. Observing the abuse of discretion standard enunciated in *Ruth v. Ruth*, 316 Pa.Super. 282, 462 A.2d 1351 (1983), I believe this was error.

Applying the procedure outlined above, we first consider the relevance of the presumption of marital property to any property acquired during marriage. Although the residence was titled in the wife's name, and clearly falls within the exception of 23 P.S. § 401(e)(1), any increase in value attributable to either party becomes property acquired during the marriage subject to marital distribution. The husband's contribution of $8,400 becomes marital property subject to consideration for equitable distribution under the guidelines of 23 P.S. § 401(d). Even accepting the $21,500 figure (which is questioned below) there remains $13,100 of the increased appraisal which must be evaluated as to enhancement by virtue of appellee's contribution, increase in actual value and/or as affected by inflation. The only portion of the increase in appraisal of which there is sufficient evidence to consider for equitable distribution is the $8,400. Even this is not clearly subject to *equal* distribution, but must be considered with other factors particularly including 23 P.S. § 401(d)(7):

> (7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

The $5,400 was placed into a joint account, from which substantial improvements to the property were made such as, central air conditioning, roofing, landscaping, papering, painting, lighting, storm doors and windows. In addition, the master estimated the value of appellee's labor at $3,000 in completing the home improvement projects. At the same time, appellant's savings, employment income and support payments for her children were going into the account as was the income from appellee. The increased value could well have been attributable to a greater degree to the financial and work contribution by appellee, although no

evidence was produced to establish this. Also, other maintenance and improvement items continued throughout the length of the marriage to separation and must be evaluated. Appellee continued financial contributions on an "as needed basis" after separation. Additionally, there was neither consideration of encumbrances which might have existed at the time of marriage or at the time of distribution, nor was there consideration of the benefits to appellant in remaining in the residence without accounting for rental value. Finally, the total intrinsic increase in value, and that attributable to inflation, should be ascertained. It is apparent that an equal apportionment, as decreed by the trial judge, is no more equitable than a percentage based on financial contribution, work and labor as recommended by the master. Given the above factors, it should be possible to ascertain the increase in value from the date of marriage to the date established for distribution. I repeat that the significance of the individual contribution becomes relevant in ascertaining whether or not there was an increase in value and in determining the effect of any inflationary increase, as these factors have application to the proper division of the property and are relevant when a determination of the distribution is made under section 401(d). There are insufficient findings to determine either aspect of this case. My formula reduces itself to five factors: 1) market or other value at time of marriage; 2) market or other value at ascertained distribution date (see footnote 7, *supra*); 3) the increase attributable to effort and contributions of either party; 4) increase attributable to intrinsic value; and 5) inflationary effect.

In concluding its analysis and application to the cases sub judice, the majority would affirm the courts below in both cases. I would agree that affirmance would be appropriate in *Tompkins* as the parties had stipulated to the increased value in the lower court, so there is no need to apply our rationale to a determination of what the increased value would be. *Anthony*, however, is a different matter. Affirmance would be an injustice and the equivalent on our part to constructing a superhighway to lead the parties to a

dead end; we would have failed to fulfill the basic function of this appeal. The lower court in this case completed only one-half of the evaluation and consideration necessary to a just and fair distribution of marital property. It failed to ascertain the appropriate time for fixing value and, thereafter, failed to fairly and equitably determine how the increased value should have been distributed. Our law does not require *equal* distribution as do community property regimes, but *equitable* distribution in conjunction with the mandate of the Divorce Code. *Semasek, supra.*

The trial court considered the following factors:

1.) Fair market value of the property at the time of marriage which was set at $43,500.

2.) Fair market value at time of separation, set at $65,-000.

The difference between these two valuations was $21,500, which the court divided equally, without evaluation. This manner of distribution is unacceptable and does not conform to the procedure enunciated in *Sergi v. Sergi*, 351 Pa.Super. 588, 506 A.2d 928 (1986); *Winters v. Winters*, 355 Pa.Super. 64, 512 A.2d 1211 (1986).

It did not consider those factors, which are of equal importance:

1.) Fair market value at the time of distribution hearing ($72,000), the point between value at separation and divorce which would appear to be most equitable. *Sergi, supra; Winters, supra.*

2.) The valuation at two points of attempted reconciliation: July 1980 ($68,000), December 1980 ($69,000), and whether the reconciliation efforts, lasting for one and one-half years after separation, had some bearing on setting value at distribution.

3.) The contribution or dissipation to the increase in value by the respective parties, and in particular, the continuing effect after separation of monetary and in-kind work of the husband toward that increase in value.

4.) Whether or not inflation was a factor and if so, whether it is a relevant consideration.

The majority would find that once the lower court determined that increased value was, under the Code, marital property, even if its legal basis was the erroneous reliance on *Birkel, supra,* (increased value to be measured by contribution during the period of marriage), its inquiry and our inquiry would end. The entire focus of this appeal on the part of the parties was the distribution of the assets. *Sergi,* cited above, is exactly identical to *Anthony* on this issue. In *Sergi,* the issue involved the increased value of a home valued at $36,000 on acquisition, $50,000 at the date of separation and $63,000 at the date of the hearing on equitable distribution. In affirming the lower court on its finding that the value of marital property was $27,765, the increase between purchase price and value at distribution hearing, it ruled out the date of separation as the appropriate time for fixing value of property. The *Sergi* court relied on the Divorce Code which provides:

(6) Effectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and *insure a fair and just determination and settlement of their property rights.* (emphasis added) 23 P.S. § 102(a)(6). *Accord Winters, supra,* where we applied the same reasoning to increased value of prior owned securities.

The lower court relied entirely on the master's report except that it rejected *Rudd v. Rudd,* 65 Erie 58, 25 Pa. D. & C.3d 699 (1982), which excluded increase in value, and instead, followed *Birkel, supra,* which allowed increased value to the extent that value was increased as a result of marital effort. The lower court also established valuation at the time of separation and did not explain or justify its reason for doing so.

The master acknowledged the efforts of the parties at reconciliation, including actual attempts at cohabitation. The report stated the following:

Following the July 1980 joint occupancy of the marital home for defendant's rehabilitation of his knee ... the parties continued to see each other and to attempt to

reconcile their marriage. They consulted a psychologist and agreed to make another try at the marriage during the 1980–81 Christmas and New Year's holidays. Between July 1980 and the end of that year, the husband 'came by all the time' (N.T. p. 44) although not remaining overnight. Several attempts were made to live together after July of 1980, but each failed. The last intimate moment was on New Year's Eve of 1980–81 (N.T. p. 71).

Page 5, Master's report.

Despite this clear finding of efforts of reconciliation and maintaining contact from June 1979 to December 1980, for distribution purposes the master fixed the value of the property as of June 1979. His reason for doing so is unclear even though he stated the date of separation was critical to the determination of value. It appears that the master has inadvertantly incorporated the exception of 23 P.S. § 401(e)(4) (from marital property):

(4) Property acquired after separation until the date of divorce, provided however, if the parties separate and reconcile, all property acquired subsequent to the final separation until their divorce.

He has treated increased value beyond the date of separation as a distinct acquisition instead of part of a continuum in changing value of property already determined to be subject to equitable distribution. The property became marital property as to its increased value from the time of marriage and did not cease to be such at the time of separation. *See Sergi* and *Winters, supra.*

Through a convoluted and untenable formula, the master determined that the ratio of the husband's gift toward maintenance of the property was 19.3 per cent ($8,400/$43,-500) of the value at marriage, the increase in value until separation was $22,000 (error, as it was actually $21,500), which entitled defendant/husband to $4,246 (19.3% x 22,000) as his pro rata share of increased value. The trial judge rejected this and, without explanation of his reason for selecting the time to set value as of the date of separation, and without explaining his reason for making distribution,

took the value at date of separation ($21,500) and divided it equally.

Thus the basis of this distribution is unsupported in law. The master erroneously relied on *Rudd, supra,* in determining increased value was not subject to distribution, but compromised by permitting the "gift" of refurbishment funds and in-kind contribution to inure to the wife's benefit, compensating the husband by allowing a percentage of the increase in value to the degree the husband contributed to the value of the property. If the master were consistent, he would have permitted this contribution to continue *to inure to the benefit of the defendant/husband to the date of distribution as a charge on the principle upon which increased value accrued,* but instead, he held it applied only to the date of separation. The husband, through his contribution, had also assisted in paying the mortgage and taxes, which the master considered rent and not a contribution to the value of the property. Master's report, p. 15.

The trial judge rejected the master's rationale, adopted *Birkel, supra,* and as stated above, took the increase in value to the date of separation and divided this amount equally. Thus we can find no supportable basis for the master's decision, and in modifying the master's finding, the trial court, partly on the basis of lower court case law, *Birkel, supra,* which we reject, and partly on the findings of the master, which were improper, made distribution. The trial court, while rejecting the master's reasoning on the application of increased value, adopted the separation date of June 1979 for fixing the value. In doing so, without any discussion as to why this was the appropriate date or why an equal division was fair, he failed to comply with the requirement of the Divorce Code that:

> [i]n an order made under this chapter for the distribution of property the court shall set forth the reason or reasons for the distribution order.

23 P.S. § 404.

The inquiry must continue to a final determination and consider all of the increase in value to the time of the

distribution hearing. Specifically, the court below must determine the appropriate date for fixing value, *Sergi, supra,* the effect of individual contribution or dissipation to increased value and the weight, if any, of inflation on distribution.

In a recent Supreme Court decision, *Duff v. Duff,* 510 Pa. 251, 507 A.2d 371 (1986), in reversing the Superior Court and holding that an additional tax assessment on a tax liability should be considered a joint liability of the marital estate, the Court, in a footnote and speaking through McDermott, J., stated:

> We remand this case in order to allow the trial court to re-evaluate the equitable distribution of the Rorer stock, taking into consideration the joint liability of the tax assessment, penalties and interest, and the circumstances surrounding the accrual of such assessment, penalties and interest. We make no recommendation as to how this division should be made.

*Id.,* 510 Pa. at 254, 507 A.2d at 373.

This should be taken as a strong signal to this Court and the trial courts that we cannot pass over lightly the evaluation of respective interests in marital property. While the trial court set the time of separation as June 1979, this couple was in contact, appellant had been back to the home on two occasions (September 1980, T.T. 8/10/82 p. 7 and December 1980, T.T. 8/10/82 pp. 9, 23) during a period when counselling was involved and reconciliation was a consideration. Following *Sergi* and *Winters,* it is submitted that the date of separation, particularly that fixed by the trial judge, under these circumstances, is not the appropriate date for establishing value. Only if the facts were conclusive would the date of separation apply as opposed to the date of distribution hearing. That is not evident here.

Appellee, throughout, had requested consideration of alternate dates for establishing value to be considered, and such alternate dates were provided by the jointly approved Real Estate Appraiser (October 18, 1974—value at marriage —$43,500; separation date—June 1979—$65,000; attempted

reconciliation—July 1980—$68,000; attempted reconciliation—December 1980—$69,000; distribution hearing date—August 1982—$72,000). *See* Exceptions of Defendant to the Report of the Master, supplemental record M1–3. *Also see* Defendant's Memo in Support of Equitable Distribution, pp. 5–6, Record Exhibit K. While appellant/wife argues *no* increased value is subject to equitable distribution, it must be determined, by the trial court, what is the appropriate increase in value, as determined by the point in time for setting value, and how the various factors required to be considered by the Divorce Code are to be applied in effecting a fair distribution. I would remand *Anthony* for that purpose.[9]

In *Tompkins*, the analysis applied to *Anthony* would be equally pertinent except for the fact that by agreement of the parties, $6,000 was the amount determined to be the increase in value of the prior owned property. In light of this finding, there is no issue as to increased value to be considered by this Court. Since the parties do not contest the distribution, but only whether or not increased value is marital property, there is no apparent abuse of discretion by the trial court in distributing that property, and I would affirm the decree of the court below.

As to *Anthony v. Anthony*, 3430 Philadelphia 1983, I would vacate that portion of the Decree pertaining to the equitable distribution of the increased value of the real estate and remand for further hearings to establish the

9. The majority's footnote 7 denies there is any issue raised by the parties in their briefs concerning the time at which property valuation should be made and, therefore, the issue is waived. The majority is incorrect because the central issue of what was the increase in value of the prior-owned property must be determined at some point in time. As a court of equity, the Divorce Court, pursuant to the mandate of the Code, must determine the fair and equitable point for ascertaining value. It is specious to argue, particularly when there were no appellate decisions at the time to guide the court or the parties, that they must state with particularity when value should have been established. In his brief, appellant referred to the reconciliations possibly entitling him to more (p. 13) and to the contributions by appellant in and out of the home (p. 14) so that issues raised in the lower court as to the time for fixing value were never abandoned on appeal.

value and its distribution in conformance with this Opinion. I would affirm the Decree in all other respects.

As to *Tompkins v. Tompkins,* 226 Harrisburg 1984, I would affirm the Decree of the lower court.

CAVANAUGH and McEWEN, JJ., join in this concurring and dissenting opinion.