GREGG v GREGG

Docket No. 67681. Submitted January 12, 1984, at Grand Rapids.—
     Decided March 20, 1984.
     Rodney R. Gregg, plaintiff, and Carole A. Gregg, defendant, were
     divorced, Ionia Circuit Court, James L. Banks, J. In the judg-
     ment's property settlement provision, the plaintiff was awarded
     a bowling alley that he had acquired prior to the marriage free
     of any interest of the defendant despite the fact that the net
     value in the bowling alley, to which both parties contributed,
     increased substantially during the parties' marriage. The defen-
     dant appealed. *Held:*

     The trial court abused its discretion in awarding nothing to
     the defendant for her portion of the interest in the bowling
     alley. However, the defendant is not entitled to one-half of the
     increase in the fair market value or entitled to one-half of the
     decrease in indebtedness because the value of her services was
     not equal to that of the plaintiff. In arriving at a property
     settlement in a divorce case, the objective is to reach a fair and
     equitable division in light of all of the circumstances. That
     portion of the divorce judgment in which nothing was awarded
     to the defendant to offset the award of the bowling alley to the
     plaintiff is reversed. A fair and equitable property settlement
     for the defendant's contributions during the marriage to the
     increased fair market value of the bowling alley during the
     parties' marriage is $8,500.

     Reversed and remanded with instructions.

1. DIVORCE — DIVISION OF PROPERTY.
     There is no set mathematical formula to compute a division of
     property in a divorce case and the amounts awarded need not
     meet any numerical standard, but they must be fair in light of
     the overall financial circumstances of the parties.

REFERENCES FOR POINTS IN HEADNOTES
[1] 24 Am Jur 2d, Divorce and Separation §§ 915, 932.
[2] 5 Am Jur 2d, Appeal and Error § 868.
[3] 24 Am Jur 2d, Divorce and Separation § 915 *et seq.*

2. DIVORCE — DIVISION OF PROPERTY — APPEAL.

> The Court of Appeals reviews property settlements in divorce cases *de novo* on the record, but does not substitute its judgment for that of the trial court except where the trial court abused its discretion.

3. DIVORCE — DIVISION OF PROPERTY.

> The portion of property awarded to each party in a divorce action should depend upon all of the equitable factors involved, including the following: source of property, contribution toward its acquisition, the years of married life, the needs of the parties, their earning ability and the cause for divorce.

*Smith Bros. Law Office, P.C.* (by *Terry J. Smith),* for plaintiff.

*William E. Tapovatz,* for defendant.

Before: MACKENZIE, P.J., and BEASLEY and K. B. GLASER,* JJ.

BEASLEY, J. Defendant-appellant, Carole Ann Gregg, appeals from the property settlement provisions of a 1982 divorce judgment which terminated her March, 1978, marriage to plaintiff-appellee, Rodney R. Gregg.

In this case, the parties stipulated that the breakdown of the marriage was attributable equally to each and that, consequently, fault was not a factor in arriving at a fair and equitable property settlement. Also, the parties agreed that the marital home built during their marriage would be sold and, after payment of liens against it, the proceeds would be equally divided.[1] However, plaintiff's bowling alley, acquired by him prior to the marriage, was awarded to him free and clear of any interest in her in spite of the fact

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The liens include a mortgage with a then balance of $38,880 and a note to a bank with a then balance of $8,805.

that the equity in the bowling alley increased substantially during the parties' marriage. It is from that award that defendant wife appeals.

At the time of the divorce trial, plaintiff was 38, once previously married, with three children of his first marriage in his custody. Defendant was 35, also once previously married, with two children in her custody. No children were born of the parties' marriage. Both parties worked hard during the marriage, both in building their new home and in running the bowling alley. Clearly, plaintiff's work as a carpenter aiding in construction of the marital home and in managing the bowling alley was of greater economic value than defendant's contribution. But, in addition to caring for all five children and maintaining the marital home, she worked a regular shift in the bowling alley: she said 60 to 70 hours a week and he said 35 hours a week. Plaintiff testified that when the parties' separation caused termination of her services in the bowling alley, he was required to hire a replacement, to whom he paid $4 per hour.

The parties stipulated two professional appraisals into evidence. The first one indicated that the bowling alley had a fair market value of $165,000 in August, 1977, a few months before the parties' marriage, at a time when defendant was already employed in the bowling alley. The second indicated a fair market value of $215,000 in August, 1982. The evidence indicated that the indebtedness against the bowling alley was reduced from approximately $119,000 to approximately $98,000 during the parties' marriage. Despite this evidence, in permitting plaintiff to retain the bowling alley, the trial judge awarded nothing to defendant by way of counterbalance.

Apparently the trial judge believed that, since

inflation was a factor in increased valuation of the bowling alley during the parties' marriage, defendant should not share in the accretion in value. He also emphasized that this was a marriage of relatively short duration and that defendant wife would share in the anticipated substantial proceeds of the sale of the marital home.

In arriving at a property settlement in a divorce case, the objective is to reach a fair and equitable division in light of all the circumstances.[2] There are no set mathematical formulas governing such division of property. The division of property between husband and wife is not required to be equal, but it may not be inequitable.[3]

On appeal, we review property settlements in divorce cases *de novo* on the record, but we do not substitute our judgment for that of the trial court, except where we believe an abuse of discretion has taken place. In *Johnson v Johnson,*[4] the Supreme Court held:

"The portion of property awarded to each party depends upon all the equitable factors involved, including the following: source of property, contribution towards its acquisition, the years of married life, the needs of the parties, their earning ability and also the cause for divorce."

Application of these factors here indicates plaintiff acquired the bowling alley prior to the parties' marriage, both parties contributed to the reduction in indebtedness and increase in value of the bowling alley during their marriage, the duration of

[2] *Wilcox v Wilcox (On Remand),* 108 Mich App 488; 310 NW2d 434 (1981).

[3] *Christofferson v Christofferson,* 363 Mich 421, 426; 109 NW2d 848 (1961).

[4] 346 Mich 418, 431; 78 NW2d 216 (1956); *Feldman v Feldman,* 55 Mich App 147; 222 NW2d 2 (1974).

the marriage was four years and both parties have earning ability, but plaintiff's is greater.

As previously indicated, in the within case the parties, by agreement, settled the equity in the marital home by agreeing to divide the net proceeds equally after sale and payment of indebtedness. Also, the parties agreed to settle plaintiff's obligation to contribute to the attorney fees payable to counsel for defendant by requiring plaintiff to pay the minimum such fee customary in the jurisdiction. Each party was permitted to keep personal property currently in their resepective possession, and neither party objected.

The trial court awarded the bowling alley to plaintiff, but gave nothing to defendant to offset that award, reasoning as follows:

"Mrs. Gregg, there is little dispute or little doubt in the court's mind, did work in the business, and she did the other things that wives do. She took care of children and cooked and so forth. Seems to me that we have to identify in any marriage situation that which allows the parties to feed themselves and pay the bills. In other words, the source of income.

"Some marriages, the vast majority of them, contain a wage earner or wage earners, and that is the source of the income to the marriage. It might have been the case in this, is that Mr. Gregg earned his $26,000 a year, whatever it was by being a carpenter with his hand or by being an accountant or by building bridges as a construction worker. In those cases, then, of course, we wouldn't be looking at his skill as a marital asset, but I suspect we really wouldn't be.

"Here his asset or his skill combined with the business that he had brought up—or came into the marriage, combined themselves to provide an income for the family.

"It seems to me the court needs to look at what was done with that particular income producing asset, how

it related to the marriage, and how it related to the defendant.

"Here Mrs. Gregg worked at it. Testimony, as far as the court sees, is that the parties worked very hard at the business to get as much as they could out of it, so that they could build a home that they both wanted to build, and that there's little testimony here that would suggest otherwise but that the marriage or use of the income produced by the asset was to get this house built, along with the parties' very hard work in doing so.

"There's no suggestion here, no finding that I can make that the—for example the assets increased the income or the increase from the assets were plowed back into it, if you will, or that they were used for some purpose outside of the marriage or some purpose to further the—further one or the other of the parties over the other. That may have been the case prior, from the testimony when Mr. Gregg said that he had added on, put new lanes and so forth. That was all done prior to this marriage. And there was no—no controversy to his testimony that he did some small additions, but the building amounted to twelve or thirteen hundred dollars worth of addition to the—or remodelling or whatever to the property. It seems to me that's the critical difference here. As a combination of their efforts in the marriage, the asset had been improved or increased, and I think the defendant would properly be awarded—or asked for a portion of that increase.

"In the current case, it's my conclusion that the increase or the result of the efforts of the parties is manifest in a home that apparently is very valuable. It seems to have a substantial equity in it that the parties built during the marriage, with the combined hard work and the income from the property."

There are flaws in this reasoning, and the evidence does not quite support the conclusions. For example, although defendant worked regularly in the bowling alley, no money was paid to her. In fairness, neither was money paid to plaintiff for

his services in managing the business. But, the fact is the parties filed joint income tax returns, including a Form 1040 Schedule C for the bowling alley, which showed a net profit for the four years of the marriage averaging approximately $25,000 per year. It is noted that this net profit reported in the tax return showed no wages or other payments to either defendant or plaintiff. In other words, the $25,000 per year net profit was the result of their joint efforts and represented their total joint income. If we were to assume defendant worked 35 hours per week and plaintiff paid her $4 per hour (as he claimed to pay her replacement), her earnings would have exceeded $7,000 per year.

The trial judge believed that somehow income from the bowling alley went into acquisition and construction of the marital home. However, this family of seven supported themselves on approximately $25,000 per year realized from the bowling alley. This record does not indicate that there was any significant surplus of income from the bowling alley for use in building a home. If there was, it would seem to arise from the hours that defendant wife worked in the bowling alley without compensation. At least, we see no reason to disregard totally the wife's contributions to the increase in value of the bowling alley during the marriage.

The trial judge also attributed the accretion in value of the bowling alley to inflation.[5] While we agree with the conclusion that inflation occurred, we are not clear as to the trial court's inference from that fact. There is no reason why the parties should not share the effects of inflation, rather than award it all to plaintiff. We see no reason that inflation should be used as a weapon to defeat

[5] Plaintiff submitted Bureau of Labor Statistics (BLS) Consumer Price Index figures for the years in question.

a reasonable request for a fair and equitable property settlement.

In this case, we cannot escape the conclusion that it was unfair and inequitable to award nothing to defendant while permitting plaintiff to retain a bowling alley that was clearly more valuable at the time of the divorce than at the time of the marriage. We are satisfied that, if we had occupied the position of the trial court, we would have reached a different result and made some award to defendant. It is not disputed that defendant contributed substantial services to the bowling alley from August, 1977, more than six months before the marriage, until September, 1981, when plaintiff terminated her services. Neither is it disputed that during this period she also cared for his three children and her two children. Neither is it disputed that the balance of the indebtedness against the bowling alley dropped from $119,000 to approximately $98,000 during the parties' marriage, a reduction of $21,000. Neither is it disputed that in the stipulated appraisals the fair market value of the bowling alley in 1982 was $215,000, while in 1977, the fair market value of the bowling alley was $165,000, an increase of $50,000.

Under any possible measure of what would be an equitable division, it was an abuse of discretion to award nothing to defendant. Consequently, we reverse that portion of the divorce judgment in which nothing was awarded defendant to offset the award of the bowling alley to plaintiff. However, as previously indicated, we do not believe the value of defendant's services was equal to that of plaintiff in this case. For that reason, we do not believe defendant is entitled to one-half of the increase in fair market value or entitled to one-half of the decrease in indebtedness. Nevertheless,

each of these factors, plus her contribution in services, is deserving of separate consideration. In this connection, we are not inclined to adopt one exclusive method of arriving at an equitable award for defendant.

Taking all of the relevant factors into consideration, we believe a fair and equitable property settlement for defendant's contributions during the marriage to the increased fair market value of the bowling alley during the parties' marriage is $8,500.

Consequently, we amend the divorce judgment to provide for payment of the sum of $8,500 by plaintiff to defendant, payable within 90 days of entry of an appropriate order amending the divorce judgment after remand, which obligation shall be secured by a lien on the bowling alley to satisfy payment, or upon such other terms and conditions as the parties may mutually agree upon.

Reversed and remanded.