ACKERMAN v ACKERMAN

Docket No. 91655. Submitted May 13, 1987, at Lansing. Decided October 20, 1987.

Howard R. Ackerman, Jr., filed a complaint in Oakland Circuit Court seeking a divorce from Karen K. Ackerman. The court, Frederick O. Ziem, J., entered a consent order providing for the payment by plaintiff of temporary alimony and child support and the maintenance by plaintiff of continuing medical insurance coverage for the parties' minor children. Following trial, the court entered a judgment of divorce providing for the payment of alimony by plaintiff to defendant for ten years, ordered plaintiff to pay an arrearage in temporary alimony at a rate of $250 per month, and divided the marital property. The trial court subsequently entered an order reducing plaintiff's alimony obligation from ten to five years. Plaintiff appealed, challenging the court's award of alimony and its division of marital property. Defendant appealed, challenging the reduction in alimony.

The Court of Appeals held:

1. The trial court reached a reasonable and just conclusion regarding the amount of alimony to be awarded. Sufficient evidence showed that plaintiff was the party who precipitated the breakup of the marital relationship. Defendant has no marketable employment skills while plaintiff, a urologist, is clearly in a position to pay alimony as ordered. Additionally, defendant's share of the marital property following its division is insufficient for her support and maintenance.

2. The trial court's decision to reduce the period for the payment of alimony from ten to five years was made following the disclosure of defendant's intention to immediately remarry

REFERENCES

Am Jur 2d, Divorce and Separation §§ 520 et seq.; 728, 864 et seq.

Excessiveness or adequacy of trial court's property award. 56 ALR4th 12.

Divorce: equitable distribution doctrine. 41 ALR4th 481.

Excessiveness or adequacy of amount of money awarded as permanent alimony following divorce. 28 ALR4th 786.

Alimony as affected by wife's remarriage, in absence of controlling specific statute. 48 ALR2d 270.

following her divorce from plaintiff, a fact defendant attempted to and for a while succeeded in concealing from plaintiff and the trial court. The Court of Appeals found no abuse of discretion on the part of the trial court, concluding that the trial court was merely realigning its judgment in light of this newly discovered fact.

3. A fair and equitable division of property was made by the trial court in light of all the circumstances in this case.

Affirmed.

MacKENZIE, J., dissented in part. Judge MacKENZIE would hold that the trial court abused its discretion in modifying the original judgment of divorce to reduce the alimony award from a period of ten years to five years. She would hold that defendant's intention to remarry is irrelevant to a proper determination of alimony since alimony should be established from facts relating to the marriage that is the subject of divorce proceedings, and not a future marriage, which is an expectancy that may not come into fruition. Judge MacKENZIE concurs with the majority in all other respects.

1. DIVORCE — ALIMONY.

Factors to be considered in determining whether alimony should be awarded in a judgment of divorce include (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the ability of the parties to work, (4) the source of and amount of property awarded to the parties, (5) the age of the parties, (6) the ability of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the health of the parties, (10) the prior standard of living of the parties and whether either is responsible for the support of others.

2. DIVORCE — ALIMONY — DIVISION OF PROPERTY — APPEAL.

The Court of Appeals reviews a divorce case de novo but will not substitute its judgment relative to an award of alimony or division of marital property for that of the trial judge absent a showing of an abuse of discretion or unless the Court of Appeals would have reached a different result had it occupied the position of the trial judge.

3. DIVORCE — DIVISION OF PROPERTY.

The portion of property awarded to each party in a divorce action should depend upon all of the equitable factors involved, including the source of property, contribution towards its acquisition, the years of married life, the needs of the parties, their earning ability and the cause for divorce.

4. Divorce — Division of Property.

> Fault is still one of many valid considerations in matters of property division in divorce actions notwithstanding Michigan's no-fault divorce law, and a trial judge's consideration of fault in determining a property division will not be disturbed absent an abuse of discretion.

*Beier, Howlett, Hayward, McCann, Jones, Kingsepp & Shea* (by *Eric J. McCann*), for plaintiff.

*Williams, Schaefer, Ruby & Williams, P.C.* (by *John W. Griffen, Jr.*), for defendant.

Before: DANHOF, C.J., and MacKENZIE and J. P. SWALLOW,* JJ.

PER CURIAM. Plaintiff, Howard R. Ackerman, Jr., and defendant, Karen R. Ackerman, appeal as of right from a judgment of divorce and an order modifying that judgment entered by the Oakland Circuit Court. On appeal, the trial court's provisions regarding alimony and the division of marital property are challenged. We affirm.

Plaintiff filed a complaint for divorce on April 3, 1984, and a consent order was entered on May 31, 1984, providing for the payment by plaintiff of $4,000 per month in temporary alimony and child support, and for the maintenance by plaintiff of continuing medical insurance coverage for the parties' minor children. Plaintiff fell behind in his payments and was held in contempt of court on January 14, 1985. As a result of a motion for reconsideration filed by plaintiff, the court entered a consent order on March 28, 1985, ordering plaintiff to pay $1,500 to defendant, thereby reducing plaintiff's arrearage to $11,000. In addition, the court modified the May 31, 1984, order so that plaintiff's temporary monthly obligation was re-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

duced from $4,000 to $3,000, and the earlier order finding plaintiff in contempt of court was set aside. Subsequently, on July 24, 1985, plaintiff filed a notice of rejection of a mediation award. A trial was conducted on October 31 and November 1, 1985.

At trial, defendant testified that she and plaintiff were married on June 8, 1957, when plaintiff was finishing his premedical studies at the University of Illinois. During the course of their marriage, four children were born: Mark, twenty-six; Scott, twenty-one; Brett, eighteen; and Stacey, fourteen. Defendant stated that plaintiff had filed for a divorce in 1964 and had had a divorce complaint drafted in 1976, and that in 1976 plaintiff's mistress, Earlene Fitzsimmons, had telephoned her to say that plaintiff planned to obtain a divorce. Defendant also stated that in 1976 she found plaintiff in Fitzsimmons' apartment about two days after he had said that he was never going to see her again. After this encounter, plaintiff promised defendant that he would end his extramarital relationship. Nevertheless, after plaintiff relocated his medical practice to Florida in 1983, he and Fitzsimmons lived together in a condominium located in Sarasota.

Regarding the marital property, defendant testified that the parties took out a second mortgage on the marital home for $123,000, and the resulting loan was used to pay off certain debts and loans, and to pay the expenses plaintiff incurred in his move to Florida. She maintained that at the time of plaintiff's move to Florida, she had $11,000 in an account at the Community National Bank and $30,000 in an account at Merrill Lynch, Inc. Subsequently, she spent all but $6,000 of the Merrill Lynch account money by having air conditioning installed in the marital home, paying back loans

to her brother and father, and paying other miscellaneous expenses. Moreover, defendant acknowledged that she possessed a diamond ring worth $49,000 and that the proceeds of the foreclosure sale on the marital home, after payment on the first and second mortgages were satisfied, totalled $152,000.

Plaintiff, a physician in the practice of general surgical urology, testified that marital discord existed throughout the marriage due to the personality and attitude differences of the parties. According to plaintiff, defendant caused conflicts whenever he or any of the children failed to do or believe whatever defendant wanted to be done or to be believed. He stated that after defendant talked to him and Fitzsimmons in 1976, he promised to stop seeing Fitzsimmons if defendant would "change her manner of living with me." Since defendant failed to change, he said, his relationship with Fitzsimmons was rekindled.

Plaintiff moved his medical practice to Florida because it was more lucrative there than in Michigan. He stated that a second mortgage on the marital home was obtained in order to support his family during the period of his transition in practice from one state to another. Of the $123,000 loan, he said $65,000 was used to pay off three outstanding marital debts. The remaining amount was deposited in a joint account of the parties, part of which was used, again, to pay off marital debts. Plaintiff testified that of the remaining $42,000, defendant deposited $30,000 into a private account with Merrill Lynch and continued to use the balance of approximately $11,000 or $12,000. Plaintiff denied having personally used any of the $123,000 loan. In addition, plaintiff stated that he had sent defendant $58,500 in court-ordered alimony, as well as $8,500 in cash since January,

1984. Plaintiff also stated that he had sent $2,983 for the children's health insurance, $2,160 for car insurance on defendant's two cars, $13,014 in interest on the second mortgage, and $41,007 in college tuition and miscellaneous expenses. Therefore, plaintiff asserted that he had sent defendant $117,664, which amount was exclusive of the approximately $42,000 held by defendant in her accounts.

Moreover, plaintiff testified that in his medical practice he had incurred $30,000 in expenses during 1984 which were not recouped by revenues. He also stressed that he had an outstanding loan from the Pan American Bank of Sarasota, Florida in the amount of $95,500, and other debts totalling $26,124, and that one of the companies in which he had a tax shelter investment, American Fire Industries, had gone into bankruptcy. His second tax shelter investment, Standard Cricket Club, purchased in 1980 for $71,000 and for which he received $168,167 in tax writeoffs, would carry a cash value of $45,767 if sold in 1990.

Gerald Carnago, a lawyer and certified public accountant, estimated that the value of plaintiff's equity in the Standard Cricket Club was $117,322, but Kurt Anderson, a vice-president of the Hall Financial Group, estimated that if the asset was immediately liquidated plaintiff might incur a tax liability of $39,000.

The deposition of Earlene Fitzsimmons was read into evidence. Fitzsimmons stated that she first met plaintiff on an airplane flight in 1971, and that in 1972 she moved from Connecticut to Michigan. She testified that she was thirty-eight years old, had never been married, and had no children. According to Fitzsimmons, who was cohabiting with plaintiff in a condominium in Sarasota, plain-

tiff intended to marry her after obtaining a divorce.

On November 27, 1985, the trial court entered a judgment of divorce providing for, among other things, alimony and the division of marital property. Regarding the former, plaintiff was ordered to pay nonmodifiable alimony to defendant for ten years. The amount to be paid was set at $1,000 per month until the parties' youngest child, Stacey, reaches the age of eighteen; thereafter, the monthly amount was to increase to $2,000 until the end of the ten-year period. In addition, plaintiff was ordered to pay the arrearage of $11,000 in temporary alimony at a rate of $250 per month. Regarding the division of the marital property, the judgment provided that defendant receive the $152,600 net proceeds from the foreclosure sale of the marital house, all the furniture and furnishings of the marital home, the Merrill Lynch account, with a balance of $6,034, her jewelry and personal effects, worth approximately $49,000, and a 1983 Lincoln automobile and 1980 Chevrolet Citation automobile. On the other hand, plaintiff was awarded his pension trust and profit-sharing account, the Standard Cricket Club Associates investment, the American Fire Industries investment, a 1981 Chevrolet Citation automobile, his medical equipment, supplies, and leasehold improvements to his Sarasota, Florida medical practice, and his Sarasota medical practice. Moreover, plaintiff was ordered to pay several debts totalling approximately $30,000, including defendant's Mastercard credit card bill of approximately $8,000, and to continue to name defendant as an irrevocable beneficiary on his $500,000 life insurance policy as long as he had any obligation under the judgment.

On March 7, 1986, the trial court amended the

November 27, 1985, order to the extent that the ten-year period provided for the payment of alimony was reduced to five years.

On appeal, both parties challenge the trial court's award of alimony, and plaintiff challenges the court's division of marital property. Regarding alimony, plaintiff claims that the court erred in awarding any alimony whatsoever, whereas defendant contends that the trial court erred in modifying the original November 27, 1985, judgment so that the period for alimony was reduced from ten years to five years.

A court may award alimony in a divorce action as it considers just and reasonable, after considering the ability of either party to pay, the character and situation of the parties, and all the other circumstances in the case. MCL 552.23; MSA 25.103. A trial judge is given wide discretion in awarding alimony. *Westrate v Westrate,* 50 Mich App 673, 674; 213 NW2d 860 (1973), lv den 391 Mich 812 (1974). The review of a decision to award alimony is based upon a consideration of many relevant factors, including the following:

1. The past relations and conduct of the parties.
2. The length of the marriage.
3. The ability of the parties to work.
4. The source of and amount of property awarded to the parties.
5. The age of the parties.
6. The ability of the parties to pay alimony.
7. The present situation of the parties.
8. The needs of the parties.
9. The health of the parties.
10. The prior standard of living of the parties and whether either is responsible for the support of others.
11. General principles of equity. [*Parrish v Parrish,* 138 Mich App 546, 554; 361 NW2d 366 (1984),

quoting *McLain v McLain,* 108 Mich App 166, 171-172; 310 NW2d 316 (1981). Citations omitted.]

In determining the amount of alimony to be awarded, a court should consider the following factors:

> (1) [T]he duration of the marriage, (2) the contributions of the parties to the joint estate, (3) the age of the parties, (4) their health, (5) their stations in life, (6) the necessities and circumstances of the parties, and (7) the earning ability of the parties. *York v York,* 113 Mich App 306, 309; 317 NW2d 604 (1982). [*Parrish, supra,* p 557.]

Although this Court hears divorce cases de novo, it will not substitute its judgment for that of the trial judge unless it is convinced that, had it occupied the position of the lower court, it would have reached a different result, *Arnholt v Arnholt,* 129 Mich App 810, 814-815; 343 NW2d 214 (1983), or unless there is a showing of abuse of discretion, *York v York,* 113 Mich App 306, 309; 317 NW2d 604 (1982).

In the present case, our review of the record reveals that the trial judge considered the relevant factors and reached a reasonable and just conclusion concerning the amount of alimony to be awarded. There was sufficient evidence presented to show that plaintiff was the party who precipitated the breakup of the parties' marital relationship. In addition, it was established that plaintiff obtained defendant's agreement to obtain a second mortgage on the marital home without her knowing about plaintiff's plans to move his medical practice to Florida. Essentially, the second mortgage permitted plaintiff to make the move to Florida, where he cohabited with Earlene Fitzsimmons. Thus, it was clearly the actions of plaintiff,

who wished to get out of his marriage, that caused the marital home to be sold at a foreclosure sale. After the house was sold and the two mortgages were satisfied, the net proceeds amounted to only approximately one-third of the value of the home.

At the time of trial, defendant was forty-five years old and had no great marketable skills. On the other hand, plaintiff enjoyed a lucrative general surgical urology practice in Michigan, which he moved to Florida in the belief that his practice could be more profitable there. Although he sustained losses of approximately $30,000 in his first year of practice in Florida, during the first nine months of the subsequent year he made about $80,000.

We find that the trial court did not err, either in awarding alimony or in its determination of the amount of alimony to be awarded. Our review of the record indicates that, under the facts of this case, the estate awarded to defendant was insufficient for her suitable support and maintenance, and that plaintiff clearly has the ability to meet the alimony payments awarded to defendant by the trial court.

Defendant, as cross-appellant, argues on appeal that the trial court abused its discretion in modifying the alimony provision of the November 27, 1985, judgment such that the period of alimony was reduced from ten years to five years. We disagree.

The alimony period was reduced by the trial judge in response to plaintiff's motion to set aside the judgment pursuant to MCR 2.612. In his motion, plaintiff stressed that during the divorce trial, defendant, in support of her prayer for alimony and for a greater share of the marital property, continuously argued that she was without any means of supporting herself in the future, and

that the court would thus do best to award her alimony that would not terminate upon her remarriage. Plaintiff alleged that, contrary to defendant's representations, at the time of trial she had already made plans to remarry, and that she had, in fact, married on December 30, 1985. In support of his allegations, plaintiff included an affidavit signed by his oldest child which stated that "prior to the divorce trial, his mother told him not to inform his father of her intended remarriage, because it might affect the outcome of the divorce trial."

It is true that remarriage alone is not sufficient to support a cancellation of alimony. *Hettiger v Hettiger,* 37 Mich App 431; 195 NW2d 10 (1971), lv den 386 Mich 789 (1972). In this case, however, it was established that defendant planned to remarry prior to the divorce trial and that she instructed her children to conceal this fact from plaintiff for fear of affecting the proceedings. Apparently, plaintiff's counsel did not inquire at trial whether defendant intended to remarry. Such an intent would have been very difficult to divine in this case. Plaintiff clearly had no indication that defendant planned to remarry only one month after the divorce was finalized.

We conclude that the trial court, by modifying the alimony provision, was simply realigning its judgment to reflect the facts in this case. One of the initial premises upon which the award of alimony was based was shown to be less than accurate, and the modification resulted from a reassessment based on the newly discovered circumstances. In addition, it was equitable for the court to modify its award of alimony in the wake of its discovery that defendant tried to conceal her intentions to remarry immediately. Here, defendant sought equity from the court but, in part,

failed to do equity. Clearly, defendant's intention to remarry would have been pertinent in determining the amount and length of the alimony to be awarded. We are also not unmindful that, in the property settlement, defendant received almost all of the parties' liquid assets, totalling more than $160,000.

Under these facts, we find no error in the trial court's curtailment of the alimony period from ten to five years.

Plaintiff also argues on appeal that the trial court abused its discretion in determining the disposition of certain assets and liabilities of the parties. Plaintiff specifically challenges the court's determination that he is required to pay defendant's $8,000 Mastercard credit card bill and $11,000 in temporary alimony arrearages, and that defendant was not required to assume liability for losses associated with the American Fire Industries investment.

This Court reviews property settlements in divorce cases de novo. However, it will not substitute its own judgment for that of the trial judge unless there has been an abuse of discretion, *Gregg v Gregg,* 133 Mich App 23, 26; 348 NW2d 295 (1984), or unless it is convinced that it would have reached a different result had it been sitting in the trial court's position, *Hatcher v Hatcher,* 129 Mich App 753, 760; 343 NW2d 498 (1983). See *Rust v Rust,* 143 Mich App 704, 705-706; 373 NW2d 197 (1985). The objective of the property settlement is to reach a fair and equitable division in light of all the circumstances. Such division need not be equal, it need only be equitable. *Gregg, supra,* p 26. As stated by the Supreme Court:

The portion of property awarded to each party depends upon all the equitable factors involved,

including the following: source of property, contribution towards its acquisition, the years of married life, the needs of the parties, their earning ability and also the cause for divorce. [*Johnson v Johnson,* 346 Mich 418, 431; 78 NW2d 216 (1956).]

Notwithstanding Michigan's no-fault divorce law, fault remains a valid consideration in matters of property division, and a trial judge's consideration of fault will not be disturbed absent an abuse of discretion. *Kretzschmar v Kretzschmar,* 48 Mich App 279, 289; 210 NW2d 352 (1973); *Davey v Davey,* 106 Mich App 579, 581; 308 NW2d 468 (1981).

The trial court in this case stated that plaintiff's fault was considered in determining the division of the parties' property. It is clear that defendant did not specifically request that the trial court order plaintiff to pay defendant's Mastercard debt, and that the debt was not incurred by plaintiff. Nevertheless, a fair reading of the record suggests that defendant incurred the Mastercard debt in order to help support herself and the parties' one minor child. We do not find that the trial court erred in placing the burden of repayment for this debt on plaintiff.

Regarding the $11,000 in temporary alimony arrearages which plaintiff is required to pay under the divorce judgment, we also do not detect error. Plaintiff was a party to a consent order entered on May 31, 1984, wherein he agreed to pay defendant $4,000 per month. Thereafter, he fell into arrears in the amount of $12,500. A second consent order was entered on March 28, 1985, wherein defendant agreed to pay defendant $1,500, thus reducing the arrearage to $11,000. Defendant's monthly obligation was also reduced in that order from $4,000 to $3,000. In the divorce judgment, the court ordered

plaintiff to pay off the $11,000 at a rate of $250 per month.

On appeal, plaintiff contends that defendant squandered $24,000 of the $30,000 in the Merrill Lynch account, and that defendant improperly repaid a loan of $16,000 to her father from the monies in that account. Moreover, plaintiff asserts that defendant's refusal to invade the Merrill Lynch account in order to pay off the arrearage caused him, in effect, to pay the arrearage twice.

The $30,000 in the Merrill Lynch account was a portion of the $42,000 that represented the cash amount of the loan derived from the second mortgage on the marital home. Plaintiff took out the second mortgage to pay off certain marital debts and to allow him to relocate his Michigan medical practice to Florida. Plaintiff admitted that he failed to disclose to defendant that he was going to use part of the second mortgage proceeds to permit him to relocate his practice. Defendant stated that she borrowed $16,000 from her father in order to support herself and the parties' minor child, and that she repaid him from monies in the Merrill Lynch account. Defendant's refusal to invade that account to pay off plaintiff's arrearages seems to have been prompted by the desire to maintain some security against the possibility of plaintiff ceasing to make his alimony payments. In light of the substantial arrearage accumulated by plaintiff, this desire does not seem irrational to us. Moreover, we perceive nothing improper in defendant's repayment of the loan from her father with money in the Merrill Lynch account. It seems that if plaintiff had not fallen into arrears, defendant would not have had to borrow money to support herself. In addition, the repayment of the arrearage in $250 monthly installments seems well within plaintiff's ability to pay. Therefore, we

conclude that the trial court did not err in ordering plaintiff to pay defendant the alimony arrearage.

Finally, plaintiff argues that the trial court erred by failing to order defendant to hold plaintiff harmless from any liability associated with the investment in the bankrupt American Fire Industries in Tampa, Florida. On this issue, the trial court refused to modify the original divorce judgment, under which plaintiff was given possession of the investment.

Plaintiff asserts that defendant should have been given possession of this liability because, prior to trial, defendant concealed from him and from the court a letter from American Fire Industries addressed to plaintiff. The letter, however, disclosed only that the Internal Revenue Service was challenging the propriety of the American Fire Industries deduction and that plaintiff could send $1,000 to the company to help pay attorney fees in the proceeding challenging the IRS's position. It did not shed any light on whether the investment was an asset or a liability. Even in his appellate brief, plaintiff acknowledges that "the matter was currently in dispute with the IRS, [and] it is not possible to determine the true extent of the parties' liability, if any." The awarding of the American Fire Industries investment was properly left to the sound discretion of the trial court, and on appeal we detect no abuse of that discretion.

Finding no error on review, we affirm in toto the trial court's disposition of this case.

Affirmed. No costs, neither party having prevailed in full.

MacKenzie, J. *(dissenting)*. I dissent in part. I would find the trial court abused its discretion in modifying the original judgment of divorce to re-

duce the alimony award from a period of ten years to five years. Otherwise, I concur in the majority opinion.

The judgment of divorce specifically provided:

ALIMONY

9. IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff Husband shall pay *non-modifiable* alimony to the Defendant Wife for her support and maintenance for a period of ten (10) years as follows:

a) the sum of One Thousand Dollars ($1,000.00) per month until 12/19/89 when Stacey Lynn Ackerman, the youngest child of the parties becomes eighteen (18) years of age; and

b) commencing 12/19/89, the sum of Two Thousand Dollars ($2,000.00) per month, until the end of the ten (10) year period provided herein;

said payments to commence as of 11/1/85 and to be paid in advance, provided, however, said alimony shall cease upon the death of either of the parties hereto but *shall not cease upon the remarriage of the Defendant Wife* and shall continue for the full term as provided herein. [Emphasis added.]

The trial court and attorneys for both parties discussed the possibility that the wife would remarry. The judge stated:

The alimony is to continue until the death of either party. And in view of the fact that the Plaintiff husband is going to get remarried, alimony in this case shall continue regardless of whether the Defendant wife remarries.

The wife's attorney had argued at great length emphasizing that alimony should not in this case be terminated on remarriage because the wife should have the same right to live her own life as the husband would have. The record supports the

trial court's initial award of alimony based on the
conduct of the parties, the length of the marriage,
the age of the wife, her lack of capacity to earn
money, her health problems, and the parties' es-
tablished lifestyle and standard of living.

The court, in discussing its reason for making
the modification, stated:

> Although she was not asked in the testimony
> whether—at any time, whether she had a plan to
> remarry, and was not asked whether she was
> keeping company with any man, nevertheless, if
> this Court had known that, the Court's decision
> would have been a little different.

I believe this was error. The remarriage "plans,"
according to the record, were a proposal of mar-
riage not formally accepted at the time of trial
and a statement of an intention to remarry by the
wife to one of the parties' children. Such plans
were not relevant to the alimony question. Even a
formal engagement would not seem to be relevant
to the question at trial as to the amount of ali-
mony. Engagements do not always result in mar-
riage. Actual remarriage may not put a party in a
better financial position than remaining single.
There is a certain chauvinism in the supposition
that since the lady may have been planning to
remarry her financial future was secure. Such an
assumption is particularly ironic when viewed
from the hotly contested battlefield for the dimin-
ished assets left over from the ruins of the first
marriage.

I cannot agree with the majority's statement
that the wife's intention to remarry would have
been pertinent in determining the amount of ali-
mony and length of time over which the alimony
was to be awarded. The majority lists eleven fac-
tors relevant to the decision to award alimony—

the intention to remarry is not on the list. Throughout the trial the wife was not asked whether she intended to remarry. I see no duty on her part to raise the possible intention to remarry as it was irrelevant. The entitlement to alimony is established from facts relating to the *current* marriage, not a *future* marriage. The questions of the amount of alimony and the property division are to be decided in terms of this marriage and the earning abilities and resources of the individual parties to the suit.

An *intention* to remarry, if looked at from a monetary standpoint, is at best an expectancy and, as this case demonstrates, even the financial reward or security of an actual marriage or remarriage is speculative. Therefore I would find the wife's unaccepted proposal of marriage or even her actual intention to remarry irrelevant to her entitlement to alimony. The irrelevancy of the remarriage intent is further demonstrated by the fact that the wife was not asked whether she had any prospects. Failing to volunteer the irrelevant hardly constitutes a fraud on the court.

I agree with the majority that there was no abuse of discretion in the original award of alimony and division of property in view of the facts of the case and consideration of fault on the part of the husband.

The alimony and property settlement provisions are part of a package constituted to provide for the wife's future. The modification reduced the amount of the award to the wife by $120,000. This despite the affirmative statement in the opening statement of the trial by the husband's counsel's admitting:

> We understand that based upon the length of the marriage, based upon the status of the parties,

the Plaintiff [sic] is probably going to be entitled to some permanent alimony in this case.

We would only ask the Court to award a reasonable sum, based upon the earning ability of my client to pay.

The party moving for modification of a judgment of divorce has the burden of showing new facts or sufficiently changed circumstances arising since the judgment which warrant modification. *Crouse v Crouse,* 140 Mich App 234; 363 NW2d 461 (1985); *Schaeffer v Schaeffer,* 106 Mich App 452; 308 NW2d 226 (1981); *Graybiel v Graybiel,* 99 Mich App 30; 297 NW2d 614 (1980). Evidence supporting a finding of changed circumstances must appear in the record and a proceeding to determine whether such a change exists is not a rehearing of the original case or a review of the equities of the original case. *Slater v Slater,* 327 Mich 569; 42 NW2d 742 (1950).

This Court held in *Hettiger v Hettiger,* 37 Mich App 431, 432-433; 195 NW2d 10 (1971), lv den 386 Mich 789 (1972), that remarriage alone is not sufficient to support a cancellation of alimony, stating as follows:

Although MCL 552.28; MSA 25.106 authorizes revision and alteration of divorce judgments, it is well settled that modification must be based on new facts or change in conditions arising since the judgment which justify the revision, *Verbeke v Verbeke,* 352 Mich 632 [90 NW2d 489] (1958). This record contains no new fact nor change in conditions which justifies reduction of support. The only new fact or change in condition which has bearing on cancellation of alimony is plaintiff's remarriage. This fact alone is insufficient to support a cancellation of alimony. *Groeneveld v Groeneveld,* 3 Mich App 284 [142 NW2d 14] (1966). On this record, it was an abuse of discretion for the trial

court to order reduction of support and cancellation of alimony.

The court did award a reasonable sum initially as is agreed by this entire panel. I would find an abuse of discretion in the modification by the trial court and remand for reinstatement of the original alimony provision.