## McNAMARA v McNAMARA

Docket No. 101037. Submitted October 14, 1988, at Detroit. Decided
    July 17, 1989. Leave to appeal applied for.

Virginia T. McNamara brought in Wayne Circuit Court an action
    for divorce against Paul McNamara, her husband of twenty-
    four years. The trial court, Richard P. Hathaway, J., granted
    the divorce. Despite testimony that plaintiff had a monthly
    financial need of $3,229, that plaintiff had an average net
    spendable income of $8,143 while defendant had an average net
    spendable income of $63,920, and that there was some question
    as to whether plaintiff would ever be physically able to signifi-
    cantly increase her own income, the trial court awarded plain-
    tiff alimony of $1,200 per month for five years. The trial court
    awarded defendant sole interest in a limited partnership which
    had a reputed value ranging from $76,000 to over $2 million
    and refused to find that defendant's law practice had any value
    as part of the marital estate. Plaintiff appealed.

The Court of Appeals *held*:

1. Given the relative earning capacities of the parties, the
    testimony as to plaintiff's health problems and plaintiff's em-
    ployment prospects, it was an abuse of discretion for the trial
    court to grant an alimony award of $1,200 per month for only
    five years. *As a matter of equity, the alimony award is
    amended to an award of $1,200 per month until plaintiff dies or
    remarries.*

2. It was an abuse of discretion for the trial court to fail to
    make findings as to why defendant's interest in the limited
    partnership should not be considered to be a marital asset and
    to fail to determine the value of, and plaintiff's interest in,
    defendant's law practice. The matter is remanded to the trial
    court to determine the value of the limited partnership and the
    value of the law practice and the trial court shall thereafter
    award plaintiff a one-half interest in each.

3. It was an abuse of discretion to make plaintiff pay a

REFERENCES

Am Jur 2d, Appeal and Error §§ 137, 138; Divorce and Separation
    §§ 565-571, 639-647, 864 *et seq.*

Divorce: Excessiveness or adequacy of combined property division
    and spousal support awards—modern cases. 55 ALR4th 14.

portion of the outstanding 1983 federal income tax liability in view of the fact that the IRS had already determined that there was no basis for holding plaintiff liable.

4. The trial court's determination as to the payment of witness fees is reasonable when the adjustments mandated on appeal are made.

Reversed and remanded.

C. W. SIMON, JR., J., dissented. He would hold that the trial court did not abuse its discretion. He would affirm.

1. DIVORCE — ALIMONY — APPEAL.

An award of alimony is discretionary with the trial court and the Court of Appeals will not modify an alimony award unless it is convinced that, sitting in the trial court's position, it would have reached a different result.

2. DIVORCE — ALIMONY.

Factors to be considered in determining whether alimony should be awarded in a judgment of divorce include: the past relations and conduct of the parties; the length of the marriage; the ability of the parties to work; the source of and amount of property awarded to the parties; the age of the parties; the ability of the parties to pay alimony; the present situation of the parties; the needs of the parties; the health of the parties; the prior standard of living of the parties and whether either is responsible for the support of others; and general principles of equity.

3. DIVORCE — PROPERTY DIVISION — APPEAL.

The Court of Appeals reviews the division of the marital property in divorce cases de novo but will not modify the trial court's discretionary award of marital assets unless it is convinced that it would have reached another result if it had occupied the position of the trial judge.

4. DIVORCE — PROPERTY DIVISION.

The goal in the division of marital assets in a divorce is to achieve an equitable result in light of all the circumstances and shall include consideration of the length of the marriage, each party's contribution to the marital estate and each party's needs, health, earning ability, station in life, fault and past misconduct.

*Prather, Harrington & Foley, P.C.* (by *Kenneth E. Prather* and *James R. Stearns*), for plaintiff.

*Kazul, Houston & Ferriby, P.C.* (by *Robert L. Ferriby, Jr.*), for defendant.

Before: WEAVER, P.J., and MAHER and C. W. SIMON, JR.,* JJ.

WEAVER, P.J. Plaintiff appeals as of right from circuit court orders amending the parties' judgment of divorce, denying plaintiff's motion for new trial, and granting in part and denying in part plaintiff's motion to amend the original divorce judgment. We reverse and remand.

### FACTS

The parties are both forty-eight years of age and were married more than twenty-four years. At the time of the marriage in August, 1962, plaintiff wife held a bachelors degree in fine arts and was a teacher in the Warren Woods Public School System. Prior to the marriage plaintiff also worked toward a master's degree which she did not complete. Defendant husband, then an accountant, had completed approximately three-quarters of the requirements toward his bachelor's degree at the Detroit Institute of Technology. Both parties brought nominal assets into the marriage.

Three children were born to the parties during their marriage. Two years after the marriage, the parties' first daughter was born. Their second daughter was born a year later. Plaintiff continued teaching until she became pregnant with the parties' first child, resumed work after the child was born, and stopped teaching again when she became pregnant with the second child. After the birth of the second child, plaintiff returned to work for only one year, ending her public school teaching career in 1966. During this time defendant worked while pursuing his education on weekends and evenings, and his income continued

* Circuit judge, sitting on the Court of Appeals by assignment.

to increase. After attending law school for four years at Detroit College of Law, defendant graduated in June, 1968, and has practiced law in Michigan since 1969. Defendant is also an accountant and a licensed real estate broker.

Plaintiff helped the family financially while defendant was in law school by earning enough to buy groceries and incidentals. In 1968 and 1969 plaintiff also taught at a craft shop for a couple of hours per week. For approximately fourteen years, from July, 1968, when plaintiff gave birth to their third child, until November, 1982, plaintiff mainly stayed at home performing the role of wife, mother and homemaker, but from 1971 to 1973 she also operated a craft shop. In 1980 she worked at decorating offices in defendant's medical complex, but did not work again until 1983 when defendant left the marital home.

By 1976 or 1977 defendant had become financially successful enough to purchase a home in Florida. The Florida home was later deeded to plaintiff's father to secure a debt on the house which plaintiff's father built for them in Grosse Pointe Shores. Plaintiff assisted in drawing the plans for the house and in construction. This house, the marital home at the time of divorce, was completed in 1979.

Defendant developed a drinking problem during the 1970s. He spent a great deal of time away from the marital home, kept late hours and would often come home flushed, smelling of alcohol, and then would be sick. Plaintiff tried to help defendant by attending a dozen Al Anon meetings at St. John Hospital, but defendant would not cooperate. In 1974 defendant promised to change his ways but he did not. The parties attended marriage counseling sessions for approximately three years, but discontinued the sessions in 1980 because they

thought they had worked their problems out. In 1980 defendant took out a second mortgage on the home. He left the marital home in November, 1982, came back for the Christmas holidays and left again in February, 1983, never to return.

After defendant left the marital home, the phone and utilities were shut off. In 1983 and 1984, plaintiff and the children received only sporadic financial support from defendant, a total of about $3,400 each year. Defendant stopped making regular payments on the two mortgages for the home, and plaintiff's financial situation was so difficult that she could not make them. Liens and encumbrances were placed against the home due to the parties' failure to pay both income and real estate taxes. Because plaintiff did not sign defendant's 1983 federal tax return and the IRS could not find a basis upon which to hold plaintiff liable, the IRS ultimately released plaintiff from the 1983 liability after initially holding her partly responsible. In July of 1985 the friend of the court ordered defendant to pay $400 per month in child support and $1,200 per month in alimony.

From February, 1983, until October, 1985, plaintiff attempted to work but was fired four times. Although plaintiff now performs freelance interior decorating work on a sporadic basis, she has been unable to secure permanent employment despite her attempts to do so. Plaintiff testified that she is incapable of returning to work as a school teacher because she has memory lapses and is unable to concentrate.

Defendant is in good health, whereas plaintiff is in poor health. Medical records and reports introduced at trial indicate that plaintiff suffers from a prolapsed mitral valve, chest pains, palpitation and shortness of breath, high stress for which Valium has been prescribed, persistent anxiety,

difficulty in concentrating, dizziness, headaches, visual disturbances and balance problems. One medical report, introduced by stipulation of the parties after performance of an impartial medical examination of plaintiff, stated that plaintiff suffers from intermittent hypertension, bursitis elbow, and endogenous depression which is so disabling that she is unable to hold the type of job she has held in the past. The medical expert opined that, although plaintiff might be able to return to work in one year, he could not judge what type of work she could do. By contrast, defendant's expert witness testified to his opinion, although he had neither examined plaintiff nor even spoken with her or with her physicians, that plaintiff's problems were minor, primarily caused by anxiety and by a reactive (rather than endogenous) depression that would not last long, although he could not say how long.

During the divorce proceedings, the parties agreed to sell the house, and a court order authorizing the sale was issued in 1985. However, the house was ultimately foreclosed upon for nonpayment of the mortgages, with the parties obtaining a sales price of $350,000. After deductions for taxes, interest and mortgage payments, the balance was placed in an escrow account.

Given the facts of this case, we believe that the trial court abused its discretion in awarding alimony and distributing the marital estate. Accordingly, we reverse.

### ALIMONY AWARD

Although plaintiff testified that her monthly financial needs came to $3,229, the trial court awarded her $1,200 per month for a total of five years. Utilizing the necessary evaluative factors as

applied to the facts of this case, this award was a clear abuse of discretion.

This Court will not modify a trial court's discretionary award of alimony unless convinced that it would have reached a different result. *Zecchin v Zecchin,* 149 Mich App 723, 733; 386 NW2d 652 (1986). In exercising its discretion, the trial court is to consider the parties' ages and the length of their marriage, their prior relations, conduct, and standard of living, their needs, health and present situation including responsibility for the support of others, their ability to work and pay alimony, the source and amount of property to be awarded, and general principles of equity. *Id.*

The trial court recognized that defendant's *net profit* from his law practice for the years 1981 through 1985 was as follows: (1) 1981—$76,179; (2) 1982—$25,259; (3) 1983—$65,806; (4) 1984—$76,405; and (5) 1985—$75,952. These figures include $600 per month for managing FAM (a limited partnership in which defendant owns an interest), and $80 to $100 per month for managing a medical condominium. From an approximate total net spendable income of $319,601 during these five years, this amounts to an average net spendable income of $63,920 per year.[1] This does not account for the fact that defendant was able to utilize an approximate gross income of $592,163 during this same five-year period to provide himself with a car and "business" entertainment.[2] Further, he was able to shelter income, utilize depreciation and reduce his income taxes.

The trial court did not discuss plaintiff's net

[1] Defendant himself acknowledged that his professional income over the five-year period from 1980 to 1984 averaged $61,941.

[2] In 1984, defendant spent $12,888 on these types of expenses. In 1985, he spent $14,134 on these expenses and procured a loan of $10,850 for a car for his girlfriend. From January 1, 1986, through September 1986, he spent $11,705 on such expenses.

income during the same years. However, this income was as follows: (1) 1981—$7,594; (2) 1982—$0; (3) 1983—$11,046; (4) 1984—$10,400 (including unemployment compensation); and (5) 1985—$11,676. From her approximate total net earnings of $40,716 over the same five-year period, plaintiff's average yearly net spendable income thus amounted to approximately $8,143 per year. Subtracting the year 1982 in which plaintiff earned no money, her net $40,716 earnings averaged approximately $10,179 per year over the four-year period. Unlike defendant, from her gross income for this period plaintiff was not able to provide herself with a car and "business" entertainment.[3]

In light of the foregoing, we are convinced that this Court would have reached a different result had it been in the lower court's position. None of the applicable factors weigh heavily in favor of defendant, and the balance of equities suggests that a more favorable award of alimony would have been appropriate.

The award was not a reasonable provision for a woman who, after devoting most of her adult life primarily to caring for others in the traditional role of wife, mother and homemaker, is now nearing age fifty in such poor health that she cannot keep a job and is without the skills, earning capacity or job security which defendant enjoys. During the marriage, plaintiff held only part-time jobs or jobs of insignificant duration and earning capacity and, as a result, in effect now has no career to sustain her as she embarks on her declining years. See *Zecchin, supra* at 734. Her present employ-

[3] In fact, in order to have transportation (very likely the 1979 Datsun which plaintiff received as part of the property settlement is now inadequate), the trial court recognized that she needed a car and awarded $5,000 for that purpose. Given today's prices for the purchase of a new car, even this figure seems minimal.

ment prospects are uncertain,[4] and prospects for her to achieve a living standard comparable either to her past standard or to the standard that defendant enjoys are not good.[5]

Upon a review of the record and a consideration of the equities in this case, we believe that plaintiff should have received an award of $1,200 per month as permanent alimony, for the duration of her life or until she remarries.

## DIVISION OF THE MARITAL ESTATE

This Court will not modify the trial court's discretionary award of marital assets unless convinced that it would have reached another result if occupying the position of the trial court. *Parrish v Parrish,* 138 Mich App 546, 558; 361 NW2d 366 (1984). This Court reviews property settlements in divorce cases de novo. *Ackerman v Ackerman,* 163 Mich App 796, 807; 414 NW2d 919 (1987). The goal is an equitable property distribution in light of all the circumstances, including length of the marriage, each party's contribution to the marital estate, and each party's needs, health, earning

---

[4] Even assuming that plaintiff could enter a new career with the mere $2,000 allotted by the trial court for this purpose, or assuming that plaintiff could obtain and keep a desirable, tenured teaching job at her age after being away from the teaching field for approximately twenty years, we note that teaching is a high-stress occupation even for a young person in good health.

[5] The facts of this case parallel those of *Vaclav v Vaclav,* 96 Mich App 584; 293 NW2d 613 (1980), and fall clearly within its ambit. In *Vaclav,* the husband and wife were married for fifteen years. The wife essentially ended her career opportunities when she married in order to perform the role of wife, mother and homemaker. In addition to rearing two children, the wife directly and indirectly assisted the husband in acquiring a medical degree, and the husband earned a taxable income of $111,000 in the year before the divorce judgment. Holding that the trial court abused its discretion in awarding the wife $15,000 alimony in gross to be paid over a period of three years, this Court reversed, ordering the husband to pay $15,000 per year as permanent alimony until the wife died or remarried. *Id.* at 591.

ability, station in life, fault and past misconduct. *Id.* at 807-808; *Parrish, supra* at 558.

Here, the property distribution was clearly inequitable in light of all the circumstances. This was a twenty-four year marriage with each party bringing approximately the same assets into the marriage. Plaintiff contributed significantly to defendant's success by not pursuing her own career opportunities and by providing the comfort and support, financial and otherwise, needed for defendant's well-being while he was climbing a professional and financial ladder. After achieving success and financial stability, defendant became an alcoholic, refused to seek help, neglected his family and then left his wife in dire financial straits, refusing even to pay the mortgage and income and real estate taxes.[6] Consequently, their valuable property and major asset was lost and a large percentage of any profits from the sale of that property was devoured by the debts he incurred. Therefore, even though defendant was ordered to pay over $40,000 in debts, he was primarily responsible for these debts and certainly has the earning capacity to pay them, whereas plaintiff does not have such earning capacity and probably never will. At nearly age fifty, accustomed to a fairly high standard of living but in poor health, plaintiff now finds herself alone, nearly destitute and without a career, having been fired four times from recent jobs and with poor future financial prospects.

The trial court abused its discretion when failing to make specific findings of fact indicating why the marital estate was divided the way it was. MCR

[6] Fault for destruction of the marriage and loss of the home rests primarily with defendant. It was not alleged that plaintiff was unfaithful or derelict in her duties as wife, mother and homemaker. Even assuming, as defendant asserts, that plaintiff was domineering, this would not justify an abandonment of plaintiff to a life of poverty.

2.517(A)(1), (2). The trial court should have evaluated both the limited partnership and the law practice and should have compensated plaintiff for her share.

1. *Limited Partnership.* Without any discussion, reasoning or findings of fact, the trial court dismissed plaintiff's interest in the limited partnership by merely stating that defendant "shall keep any and all monies from FAM." Given plaintiff's financial plight and the fact that this was one of the few substantial assets remaining from the marriage, the court's division was inequitable and a clear abuse of discretion.

Valuation of the limited partnership ranged from approximately $76,000 to over $2 million. Even assuming that the limited partnership was worth the lower figure, the trial court should have made a finding of fact and weighed the partnership's worth in settling the marital estate. Considering plaintiff's inferior financial position and future prospects, together with defendant's good position and excellent prospects, even including the debt obligations which defendant must assume, at the very least plaintiff should have received an interest in half of $76,000, or $38,000. Therefore the question of valuation of the limited partnership is remanded to the trial court with instructions to determine and award to plaintiff her interest.

2. *Law Practice.* Again without discussion or reasoning, the trial court refused to evaluate defendant's law practice, stating only: "This Court cannot reasonably place a value on the law practice. Therefore, since the Court has not placed a value, there is no money to be awarded from the law practice." In its amended judgment the trial court further stated that the law practice had no "readily ascertainable market value."

One need not be a lawyer or judge to know that a law practice, in which an experienced practitioner of some sixteen years can gross a 1985 income of $147,628 before expenses, has some worth. However, expert testimony for defendant valued the law practice at $0. Expert testimony for plaintiff valued the law practice at $40,000 including a goodwill figure of approximately $20,000.

Had the matter come before this Court, we are convinced that this Court would have reached a different result than that reached by the lower court. Therefore we find that the trial court abused its discretion in failing to assign a value to the law practice when dividing the marital estate. See *Kowalesky v Kowalesky,* 148 Mich App 151, 155; 384 NW2d 112 (1986), lv den 425 Mich 876 (1986).

Because the trial court did not utilize any method for evaluating the law practice, this Court cannot review the trial court's method of evaluation. Therefore we remand to the trial court for a determination of the value of the law practice. Similar to what transpired in *Kowalesky,* there is nothing in the record to support the assumption that defendant will discontinue his law practice. Thus a valuation of the practice should amount to its value to defendant as a going concern, *Id.* at 157, and plaintiff should be awarded a one-half interest.

### PLAINTIFF'S DEBT OBLIGATIONS

1. *1983 Tax Liability.* Plaintiff makes a good equity argument on this issue. Even assuming that plaintiff should accept liability for a portion of the tax liability because she contributed to the family income in 1983, it must be remembered that plaintiff's taxable income for that year was only

$12,200, from which the taxes withheld amounted to $1,154.

On this Court's de novo review, we find that it was an abuse of discretion for the trial court to make plaintiff pay $4,567 on the 1983 federal tax liability, or approximately twenty-five percent of the total owed. The trial court made no finding of fact on this issue, but merely ordered the sum assessed against plaintiff, despite the fact that an IRS special advisor testified that the IRS had released her from the obligation because there was no basis for holding her liable. Accordingly, the trial court's ruling is reversed.

2. *Appraisal Fee of Robert Sfire, M.A.I.* If plaintiff receives an award of $1,200 per month permanent alimony, percentage shares of the limited partnership and the law practice after proper evaluation, and if she is relieved of the 1983 IRS tax liability, then it would not be an abuse of discretion for the trial court to omit providing for payment of the $3,500 appraiser's fee. Because the trial court awarded payment of $2,200 for plaintiff's total expert fees and only $1,400 for defendant's total expert fees, and because the trial court also omitted to provide for defendant's $2,000 expert witness fee for James Hogan, C.P.A., the omission of plaintiff's M.A.I. fee would not constitute an abuse of discretion. MCL 552.13; MSA 25.93.

### CONCLUSION

Considering plaintiff's age and poor health, her contribution to a lengthy marriage, her present impoverished financial condition and her poor financial prospects, and contrasting this with defendant's good health, his desirable professional status and financial success, plus his part in the

destruction of the marriage and creation of a high debt structure, we are convinced that this Court would have reached a different result had it occupied the position of the trial court. The trial court clearly abused its discretion in awarding alimony, in dividing the marital estate, and in requiring plaintiff to pay one-quarter of the parties' 1983 IRS tax liability.

Accordingly, we reverse and remand to the trial court with instructions to order permanent alimony in the amount of $1,200 per month and to relieve plaintiff of the $4,567 tax liability. We also remand to the trial court for a reasoned determination of the value of the limited partnership and for entry of an award of a one-half interest in such valuation to plaintiff. We further remand to the trial court for a reasoned determination of the value of the law practice and for entry of an award of a one-half interest in such valuation to plaintiff. We retain jurisdiction.

MAHER, J., concurred.

C. W. SIMON, JR., J. *(dissenting).* I would affirm.

First, I cannot say that I would have reached a different result than did the trial court with regard to alimony. *Vance v Vance,* 159 Mich App 381, 387; 406 NW2d 497 (1987), lv den 429 Mich 870 (1987). In addition to ordering defendant to pay plaintiff alimony in the sum of $1,200 per month for five years, the trial court ordered defendant to pay all of plaintiff's reasonable medical, dental, hospital, optical and pharmaceutical expenses for that period and to pay training or tuition costs of not more than $2,000. While plaintiff has some health problems, the medical evidence shows that she is capable of working. Given the parties' ages, present situation, abilities, needs, and the

distribution of the marital property, particularly defendant's obligation to pay large debts of the estate, I would find that the trial court did not abuse its discretion in making the alimony award it did.

Second, I would not have reached a different result than did the trial court with regard to division of the marital estate. *Parrish v Parrish,* 138 Mich App 546, 558; 361 NW2d 366 (1984). Evidence regarding the value of defendant's law practice varied: while plaintiff's expert valued the practice at $40,000, defendant's expert opined that the practice was not salable because there was little recurring work and was therefore essentially valueless. I am persuaded that the distribution was equitable.

Third, I am not persuaded by plaintiff's claim that the trial court erred by requiring her to pay twenty-five percent of the parties' 1983 taxes because the Internal Revenue Service chose not to hold her liable for the assessment. Distribution of marital liabilities is fully within the equitable authority of the trial court in a divorce proceeding. Plaintiff did not file a separate return for the year 1983. Notwithstanding that defendant moved out of the marital home in February, 1983, the trial court was not precluded from assessing plaintiff a percentage of the 1983 joint tax liability. See *Rethman v Rethman,* 156 Mich App 74, 79; 401 NW2d 314 (1986), vacated in part on other grounds 429 Mich 868 (1987), elaboration of summary disposition 430 Mich 1201 (1988).

Nor am I convinced that the trial court abused its discretion by declining to order the expert witness fees in the amount of $3,500 for appraisal of defendant's limited partnership to be paid out of the escrow account. The appraiser's fee is exorbitant, i.e., unreasonable. MCR 3.206(A)(3). I there-

fore concur only in the result reached by the
majority on this last issue.